ALBANY,
Feb. 1811.

REED
v.
PRUYN and
STAATS.

---

## REED *against* PRUYN & STAATS.

A sheriff cannot with his own money pay the plaintiff on an execution, and afterwards levy the execution out of the property of the defendant; nor can he take a bond or other security, and detain the execution in his hands, and use it afterwards to enforce the payment of the money advanced by him.

SUDAM and *Benson,* for the defendants, moved, at the last term, to set aside the execution in this cause. The affidavit of *Staats,* which was read, stated, that a judgment was entered up in *August,* 1808, against the defendant *Staats,* in favour of the plaintiff, on which a *ca. sa.* for 436 dollars and 60 cents was issued to the sheriff of *Columbia. Staats* was taken by a deputy sheriff on the execution and discharged, on his procuring *Pruyn,* the other defendant, to join in the execution of a bond and warrant of attorney, as security, and judgment was entered up thereon, in favour of the plaintiff against the defendants. About 7 or 8 days thereafter, *Henry Van Slyck,* the deputy sheriff called on *Staats,* and informed him he had a *ca. sa.* issued on the last judgment, and offered to lend the money to him to dis-

charge the *ca. sa.* if *Staats* could procure a note drawn by *Pruyn*, and endorsed by *Staats*, payable at the *Hudson* bank, for about 560 dollars  *Staats* and *Pruyn* afterwards called on the deputy sheriff, who drew a note for 563 dollars, payable to *Staats* or order, at the bank of *Hudson*, 55 days after date, dated *November* 3, 1808, which was accordingly signed by *Pruyn*, and endorsed by *Staats.* The deputy told the defendants he had a *ca. sa.* against them, at the suit of the plaintiff; and being requested to produce it after the note was given, he showed a *fi. fa.;* and the defendants expressed their dissatisfaction at his conduct, and demanded a discharge of the execution. The deputy sheriff gave them a receipt, stating that he had received 495 dollars and 87 cents, with the sheriff's fees, in full of the execution against the defendants, at the suit of the plaintiff in this cause.  On the 1st of *May*, 1809, *Staats* paid the deputy 50 dollars, on account of the note. He afterwards applied to the plaintiff, to enter up satisfaction on the judgment, who informed him that he never had any judgment against the defendants, in this suit, and that he had received his money on the judgment against *Staats*  *Pruyn* died in *September*, 1810, and in *October* the deputy sheriff advertised the personal property of *Pruyn* and *Staats* for sale, on the execution in this cause. On the 2d of *October*, 1810, the deputy requested *Staats* to give a bond and warrant of attorney for the amount of the note, and that he would pay off the executions he held against *Staats*, and would give the defendant 2 or 3 years to pay the judgment, alleging that he had lent the defendant money to pay off the judgment of the plaintiff.

It appeared from a certificate of the attorneys of the plaintiff, in the suit of *Reed* against *Staats*, that an execution was issued the 20th of *October*, 1808, to the sheriff of *Columbia*, for 436 dollars and 60 cents, debt and

ALBANY,
Feb. 1811.

REED
v.
PRUYN and
STAATS.

costs, and that they had received the said sum in full of damages and costs, besides the sheriff's fees.

*Sudam* cited 19 *Vin. Abr.* 435. § 6.   1 *Lutw.* 589. *Noy*, 107.

*Van Buren* and *E. Williams*, contra, read the affidavit of *Henry Van Slyck*, the deputy, stating that he received the *fi. fa.* against the defendants in this cause the 30th of *October*, 1810, for 494 dollars and 37 cents; that he called on the defendant *Staats*, who said he could not raise the money, and applied to the deponent to lend it; that he agreed to advance the money and take a note, which, it was supposed, could be discounted at the *Hudson* bank, and the deponent gave a check on the bank, in that expectation, to the defendant. But the note was never discounted; and after it became due, no notice was given to the endorsor, so that he became discharged; and *Pruyn* refused to pay the note. That on the repeated promises of *Staats* that the deponent should be paid, all proceedings were delayed until he advertised the property. That he never had a *ca. sa.* against the defendants, and he showed them the *fi. fa.* before the note was given.

KENT, Ch. J. delivered the opinion of the court. The execution, against which the defendant *Staats* prays to be relieved, ought to be considered as satisfied and discharged. The deputy sheriff who had the execution, instead of executing it according to law, discharged it himself out of his own money, on taking a note drawn by one defendant, and endorsed by the other, payable at the bank of *Hudson* in 55 days. This he did as early as *November*, 1808, and gave the defendants under his own hand an acknowledgment of having received the full amount of the execution. The note not being paid, and having neglected to fix the endorsor by the

requisite notice, the deputy sheriff now proceeds to in-demnify himself, by putting the execution in force, which had slept quietly for two years. Such manage-ment of the process of execution, by the officer, is not to be permitted. It is liable to infinite abuse and op-pression. The law has long since, and very wisely, guarded against such application of its process. In *Waller* v. *Weedale*, (*Noy*, 107.) it was laid down by the C. B. that the sheriff on *fi. fa.* cannot detain the goods taken upon an execution in his own hands, and satisfy the debt of his own proper money, for " a grand incon-venience would ensue, if the sheriff himself might de-tain them." This case received strength and credit in *Langdon* v. *Wallis*, (1 *Lutw.* 589.) when it was cited as good law by such counsel as Serjeants *Wright* and *Lut-wyche*. It was there observed, that the law requires of sheriffs a strict execution and observance of writs, as their authority was to sell the goods, and the doctrine appeared to be approved by the decision of the court.

It was once moved as a question by Lord *Hobart*, in *Speake* v. *Richards*, (*Hob.* 206.) whether, if the sheriff on execution pay the plaintiff with his own money, he might afterwards levy the money of the defendant. But this point, if not essentially involved in the decision in *Noy*, seems to be embraced by the decision in the K. B. in *Ward* v. *Hauchel*, where it was agreed by the court, that if the sheriff takes a bond from the party, on *fi. fa.*, it was pleadable in bar of a new execution, and the court referred to a case in which such a plea had been adjudged good. (1 *Keb.* 551.) This authority clearly applies to the present case. The sheriff must look to his note; and it would be oppressive to allow him to keep an execution alive over the party, after having formally paid it himself, and accepted of a note as his own security.

The practice of sheriffs of paying executions them-selves, and taking security and judgment bonds from the party over whom they have at the time such means of coercion, is to be strictly and vigilantly watched by the courts. Such humanity is imposing. but it may be turned into cruelty. Nothing is more important to the honour of the administration of justice, than that the officers of the court should not use its process as the means of making unequal bargains, and taking un-due advantage. The facts in this case have the ap-pearance of an instance of gross abuse. The whole debt, costs, and poundage, that the defendant *Staats* was originally bound to pay on the *ca sa.* issued in fa-vour of the plaintiff in *October*, could not exceed 445 dollars. He gave a judgment bond with surety for the amount of that execution, and immediately another ex-ecution issued against him and the surety for 494 dol-lars and 37 cents; whereas the costs of entering up the judgment bond could not have been more than 18 dol-lars. On this second execution he gave a note for 560 dollars. Here is, then, by this management of taking a judgment bond to meet the first execution, and of taking a note to meet the second execution, an accumulation of debt to more than 100 dollars beyond any estimate that I can possibly make of legal charges; and this enormous *extra* accumulation of charge upon this oppressed defendant, accrued within the short space of ten days. Such conduct is not to be sanctioned or en-dured.

I am happy, therefore, that *Van Slyck*, the deputy sheriff, will be driven to seek his remedy upon the note, when the legality of this increase of the original debt, will be open to further investigation.

The court are of opinion that this motion to set aside the execution be granted, with costs, to be paid by *Henry Van Slyck* the deputy sheriff.

Motion granted.