## STEVENS vs. MORSE.

Where the brother of one of several judgment debtors advanced the amount of the execution to the officer, in order to obtain the control of it, and to satisfy it out of the property of another debtor, which was done ; the brother for whose relief the money was advanced being absent, but afterwards approving the act, and reimbursing the money ;—it was held that by such payment the execution was satisfied and *functus officio ;* and that therefore the subsequent levy was void.

In this case the officer delivered up the execution, undertaking thereby to assign it, to the person advancing the money ; and it was extended on land attached on the original writ ; the creditor subsequently ratifying this arrangement. But it was held that the officer had no authority to make the assignment ; and that this ratification, even if the execution had remained in force, could not so relate back as to defeat a *bona fide* conveyance made after the attachment.

THIS was a writ of entry, brought by *William H. Stevens,* in which both parties claimed title to the premises, under one *Joshua Stevens.*

The demandant's title was by deed from *Stevens,* dated *July* 15, 1817, and immediately registered.

The tenant's title was under an attachment made *July* 7, 1817, on a writ in favor of the *Gardiner* bank against several defendants, of whom *Joshua Stevens* was one ; which was followed by a regular judgment and execution, extended *Jan.* 15, 1818, being within thirty days after the judgment, and seasonably recorded and returned. The premises thus taken were assigned by the *Gardiner* bank, *Jan.* 25, 1819, to *Cyrus Carlton,* for the consideration of one dollar ;

Stevens *v.* Morse.

and by him conveyed, through several mesne conveyances, to the tenant.

To defeat this apparent title of the tenant, the demandant proved, by the officer who had the execution, that within fifteen days after judgment he called for certain goods of one *Henry Carlton*, another of the judgment debtors, which had been attached on the original writ, and were sufficient to have satisfied the execution ;—that to liberate these goods, *Cyrus*, by advice of the officer, procured the money by loan from the *Kennebec* bank, and paid it to the officer, taking his receipt for the amount of the execution and all fees ; and thereupon the officer delivered the execution, without any indorsement thereon, to *Cyrus*, in order that he might cause it to be satisfied out of the property of the other debtors. *Cyrus Carlton* was not one of the debtors ; and his brother *Henry* was absent at this time ; but on his return approved what *Cyrus* had done ; and paid the note given by him to the *Kennebec* bank, when it fell due. The money received by the officer was paid over to the creditors within forty-eight hours ; but he had no authority from them, except to collect the money.

It further appeared that the goods attached belonged jointly to *Cyrus* and *Henry*, who had been partners in trade, but had dissolved partnership, the goods being left in the hands of *Cyrus*, undivided ; that the object of *Cyrus* in advancing the money, as avowed by him, was to liberate his brother's property, and obtain the control of the execution ; that the directors of the *Gardiner* bank, after the money was paid over to their attorney, appointed an appraiser, by a vote passed *Jan.* 14, 1819, and authorised *Cyrus Carlton* as their agent to receive seisin of the land extended upon ;—and that after the extent, *Joshua Stevens* called on his co-sureties for contribution, from two of whom he received it.

Upon this evidence, by direction of *Weston J.*, before whom the cause was tried, a default was entered against the tenant, subject to the opinion of the court upon the sufficiency of his title ; the question of increased value being provided for by a special agreement of the parties.

*Allen*, for the tenant, argued that the transaction between the

officer and *Cyrus Carlton* did not amount to payment of the execution, so as to render it *functus officio ;* because it was not the act of one of the judgment debtors, but of a stranger ; and was done without authority at the time ; and not on the credit of the debtor, however satisfactory to him afterwards, It was therefore merely a purchase and assignment of the execution, intended as such between the purchaser and the officer at the time, and so treated subsequently by the bank. *Allen v. Holden,* 9 *Mass.* 133 *; Norton v. Soule,* 2 *Greenl.* 341 *; Cheesborough v. Millard,* 1 *Johns. Ch.* 409 *; Atto. Gen. v. Tyndal Ambl.* 614 *; Amory v. Williams,* 14 *Mass.* 20.

*R. Williams,* for the demandant, cited *Clerk v. Withers,* 11 *Mod.* 34 *;* 5 *Dane's Abr. ch.* 136, *art.* 13, *sec.* 2, 3, 4 *;* 3 *Dane's Abr. ch.* 75, *art.* 12, *sec.* 10 *; Reed v. Pruyn,* 7 *Johns.* 426 *; Sherman v. Boyce,* 15 *Johns.* 443 *; Brackett v. Winslow,* 17 *Mass.* 153 *; Hammatt v. Wyman,* 9 *Mass.* 138.

MELLEN C. J. delivered the opinion of the Court in *Cumberland,* at the adjournment of *May* term in *August* following.

Both parties claim under *Joshua Stevens.* The deed to the demandant was dated and executed eight days subsequent to the attachment in the suit of the bank against *Stevens,* but about six months prior to the levy of their execution. Therefore, if the levy was an ineffectual one, the title of the demandant is good. The officer to whom the execution was delivered for service, had no authority or direction from the bank, except to collect the contents. *Cyrus Carleton,* a brother of *Henry Carleton,* one of the execution debtors, paid him the contents, which the bank received within forty-eight hours : and the officer, at the time of receiving the amount, gave a receipt to him for the same and for his fees ; and delivered to him the execution, without any indorsement thereon. In view of all the circumstances of this case, as detailed in the report, the question is, What was the legal effect of this payment and delivery over of the execution to *Cyrus Carleton?* It is admitted that the delivery of an execution to a third person for a full and valuable consideration paid, is a legal assignment of the contents of

such execution. *Vose v. Handy*, 2 *Greenl.* 322, and cases there cited. But no one can make such assignment, but the creditor or some person by him duly authorized ; and it appears by the testimony of the officer himself that he had no such authority, nor did the bank ever make any assignment or release of their supposed right to *Cyrus Carleton* until *January* 25, 1819 ; and then in consideration of one dollar only. If this is contended to be a ratification of the act of the officer in undertaking to assign the execution to *Cyrus Carleton*, without any authority at the time, the obvious reply is that it can never be construed to have this effect, when the rights of third persons are interposed, and which would thus be defeated. Now, before the levy of the execution, and before the unauthorized assignment of the execution by the officer to *Cyrus Carleton*, the deed to the demandant had vested the title in him. The release of the bank, therefore, was too late to affect the title thus vested. But it is further contended on the part of the tenant, that the bank sanctioned the proceedings of the officer respecting the execution, by the vote of the directors, passed on the 14th of *January*—the day before the levy—appointing an appraiser, and authorizing *Cyrus Carleton*, as their agent to receive seisin. This was several days after the bank had received full payment of their execution, and at a time when they had no interest in it, nor claimed to have any ; and this appears evident from the fact above stated, namely, their afterwards releasing all title to *Cyrus Carleton* for the consideration of one dollar.

But there is another ground on which we more especially place our decision. The cases of *Reed v. Pruyn*, 7 *Johns.* 426, and *Sherman v. Boyce*, 15 *Johns.* 443, cited by the counsel for the plaintiff, have a strong bearing on the present case, as giving the legal character of the acts of an officer in receiving payment of an execution, and at the same time endeavoring to continue the judgment and execution in force as against the debtor.

The marginal abstract of the former case is, that " a sheriff cannot with his own money pay the plaintiff on an execution, and afterwards levy the execution out of the property of the defendant ; nor can he take a bond or other security, and detain the execution in his hands, and use it afterwards to enforce the payment of the money advanced

by him." In the latter case the officer joined with the defendant in a note to raise money to pay the execution, with an express agreement that the execution should remain in force. The officer being called on for the money, which he paid, sold the defendant's property on the execution. It was held that the execution was satisfied and *functus officio*, by means of such previous payment. The case of *Hammett v. Wyman*, and *Bracket v. Winslow*, are also strong to the point that a payment by one of the execution debtors is a complete satisfaction of an execution to all intents and purposes; and from that moment it ceases to exist as a legal precept. By examining the facts in this case, it appears that the execution was paid and satisfied out of the property of *Henry Carleton*, one of the execution debtors. He and his brother *Cyrus* had been partners, and though they had dissolved, their property had not been divided, and the goods which had been attached, were left in the hands of *Cyrus*, either as partner or as his agent. In either case they were under his control; and though *Cyrus* raised the money to pay to the officer the amount of the execution, yet *Henry*, as soon as he returned, approved of the course he had pursued, and reimbursed to him all he advanced, so that *Cyrus* lost nothing. On these plain facts it appears that *Cyrus* has at most paid one dollar, and perhaps not that, for the land which he conveyed to the tenant, who now insists that he has a better title than the demandant. It further appears that the personal property of *Henry*, which was attached, was sufficient to satisfy the judgment; and the professed object in view in making the above arrangement between the officer and *Cyrus Carleton*, was effectually to release that property, and procure satisfaction of the debt *in toto* out of the estate of *Joshua Stevens*, another judgment debtor. The particular reasons for this course of proceeding are not disclosed; and as it has not succeeded, it seems not material for us to ascertain. We do not perceive that the arrangements between *Stevens* and two of the co-sureties, as to a contribution and the partial indemnity of *Stevens*, can have any effect upon the demandant's title; for as the levy of the execution was rendered wholly ineffectual and inoperative by means of the payment of its amount in full to the officer, no after transactions would give it validity or any legal effect.

The case of *Allen v. Holden,* relied on by the counsel for the tenant, does not oppose those cited by the demandant's counsel. That suit was avowedly prosecuted by *Wyman* for his own benefit, in the name of *Allen,* who had assigned the judgment to him in consideration of his having settled an action which *Allen* had before commenced against the sheriff, for *Wyman's* neglect in not collecting the contents of an execution of *Allen's* against *Holden.* The court in their opinion say " The suit against the sheriff was not for the debt, but for damages for his non-performance of his duty. Nominal damages only might have been recovered ; and had the suit proceeded to judgment and execution, it would have been no legal discharge of the original debtor from the judgment recovered against him." The case of *Norton v. Soule* presented a question different from the present. That was an assignment of a mortgage deed by the mortgagee ; not of an execution by a sheriff, after receiving payment of one of the debtors.

There must be judgment for the demandant on the default already entered ; and the question of increased value of the premises must be subject to the written agreement of the parties on file.