[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 63 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 64 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 65 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 66 
The sheriff was adjudged guilty of a contempt in the wilful neglect and refusal to return the executions against the plaintiff, upon which he subsequently sold his real estate, including the premises in question, and was ordered to pay to the judgment creditors a fine to the amount of their respective claims, as the damages which they had sustained by his default, together with the costs of the proceedings against him.
The only question of any importance is, whether a sheriff who by reason of his neglect to execute final process has been compelled, either by action or by proceedings as for a contempt to satisfy the claim of the execution creditor, can enforce the process against the property of the debtor for his own benefit and indemnity. The jury have found that the assignment of the judgments to the son of the sheriff was not upon a purchase by him or for his benefit, but was colorable and for the benefit of the sheriff and for his indemnity; and that the money to the amount of the judgments, and which was the only consideration of the assignments, was paid by the sheriff to the plaintiffs in the judgments, in satisfaction of the fines imposed upon him. As the sheriff could not do that indirectly which the law *Page 67 
would not tolerate directly, the legal rights of the parties will not be varied by the form or disguise which the actors have given to the transaction. It was in substance and effect a payment of the judgments by the sheriff and an assignment thereof to him, and an attempt to enforce their collection for his own benefit. (Bigelow v. Provost, 5 Hill, 566.)
At the time of the sale of the property in question, the sheriff by whom the sale was made was the party and the only party beneficially interested in the execution of the process; and to allow an officer to wield the process of the courts in his own behalf, is contrary to well settled principles of public policy and would lead to great abuse. (Per Platt, J. in Sherman
v. Boyce, 15 John. 443.) A sheriff cannot do execution when he himself is a party, and therefore an extent by him where he is conusee will be void. (Com. Dig. Viscount, E. 1.) By statute, process in actions in which the sheriff is a party, must be directed to and executed by the coroner of the county; (2 R.S. 441, § 84;) and whether the sheriff is nominally a party or only beneficially interested cannot affect the question. If he owns the judgment upon which the final process issues, it is process in his favor, although he may not be a party to the record, and his name may not appear in the writ. This was in effect decided in Mills v. Young, (23 Wend. 314,) in which the court say "a sheriff cannot execute final process in his own favor" and apply the principle to a case in which the deputy sheriff having become liable for the debt gave his own note to the judgment creditor, took an assignment of the judgment, and afterwards under a threat to enforce the execution, procured the debtor to give his note for the amount. The note was declared to be void. The danger of a perversion of the process of the court by an interested officer, is greater when the fact that the officer charged with its execution is the party in interest, is concealed, than when it is apparent upon the face of the process itself; and if policy forbids the execution by an officer of process to which he is a party by name, a fortiori should the execution of process by him, nominally in favor of others but really in his own favor, be forbidden. I am *Page 68 
of the opinion that the acts of the sheriff for his own benefit in the execution of the final process of the court upon the judgments against the plaintiff, and the sale and conveyance by him of the premises in question were void; that when he became the owner of the judgments his power to act as sheriff under the executions ceased, and that his only remedy, if any he had, was to sue out a new execution to the coroner of the county.
But in this case, still back of the proposition considered and which I deem fatal to the defendants in this action, is the question made upon the trial and mainly relied upon in this court, whether the sheriff under the circumstances having become liable to the judgment creditors for the amounts of their judgments and been compelled to satisfy them, could be subrogated by assignment or otherwise, to the rights of the creditors, and entitle himself to enforce the judgments for his own indemnity.
It is not so much a question of individual right as of public policy. It is fit and proper that the judgment debtor should be made to pay his debts, and it is the province and business of the sheriff to whom process is issued to compel him to do so, by a proper, vigilant, and seasonable performance of his duty; but it is not discreet or consistent with just views of policy, by any inducements to encourage a lax or careless discharge of the responsible duties devolved upon sheriffs. If an officer intrusted with the execution of final process, may without peril of ultimate loss, select his own time for its execution, he may seriously interfere with the rights of the creditor by delaying the process to his prejudice, and he may at his option employ the same process to annoy and oppress the debtor and to make gain to himself. Both the debtor and creditor will be in a measure subject to the caprice of the sheriff, and serious inconveniences will result, if rights either equitable or legal are held to result to a sheriff from his own breach of duty. While it has ever been the policy of the law to protect an officer within proper limits from loss or damage in the faithful discharge of his duties, it has done nothing to encourage or protect him in the neglect or violation of those duties. The consequences of all violations *Page 69 
of duty have been visited upon him, and he has not been supposed to be entitled to any equities beyond those which enure to any other wrongdoer.
The proceedings upon the attachment against the sheriff and the payment by him of the fine to the judgment creditors to the amount of their claims, was a satisfaction to them, and the plaintiffs therein had no further claim upon the sheriff in respect to the executions or right to enforce them against their debtor. The executions had fully accomplished their purpose, which was to raise the money to satisfy the judgment creditors, and that object being attained, the power conferred by the writs upon the sheriff was spent. (Sherman v. Boyce, 15 John. 443.) The court adjudged that the plaintiffs had sustained damages by reason of the default of the sheriff, to the full amount of their respective claims, and imposed a fine upon him to that amount and directed it to be paid to them, and the payment and acceptance of this fine necessarily operated to divest them of all power as well as right to enforce the process. (2 R.S. 538, §§ 19-21.) It has been uniformly held from a very early period, that in such case no right resulted to the sheriff, either to maintain an action against the debtor for money paid, or to retain and enforce the execution for his own benefit. No distinction has been taken between payments voluntarily made by the sheriff and those made upon compulsion in consequence of a liability incurred by him, and there is no difference in principle. It cannot be material whether a sheriff voluntarily pays the amount of a claim of his own money, or by a voluntary breach of duty places himself in a position in which the payment can be enforced against him. An action is denied to him because "such a practice would be not only against the rules of law but would tend to multiply suits and increase litigation." (Jones
v. Wilson, 3 John. R. 434; Menderback v. Hopkins, 8 id. 436; Whittier v. Heminway, 9 Shep. 238; Beach v.Vandenburgh, 10 John. 361.) The right to enforce the execution for his own benefit has been denied him from principles of policy and the "grand inconvenience" which would *Page 70 
ensue. (Reed v. Pruyn, 7 John. 426; Sherman v. Boyce,
15 id. 443; Mills v. Young, 23 Wend. 314; Bigelow v.Provost, 5 Hill, 566.)
In Reed v. Pruyn, the court would not permit the deputy sheriff who had paid the debt to enforce the execution for his own benefit; and in Bigelow v. Provost the sheriff having been attached for not returning the execution, the deputy to whom it had been delivered paid the judgment and took an assignment of it for his own benefit, and it was held on a motion to set aside the execution, that he could not enforce its collection, although the defendant had promised to pay it to him. The learned judge by whom the decision was pronounced, while he regretted to see the moral obligation which had in that case been incurred by the debtor violated, was constrained to uphold the principles of policy which were involved in that case and which forbade the execution to be enforced at law. A deputy sheriff was held liable in trespass for selling the goods of the judgment debtor upon an execution, after the creditor had been paid from moneys raised upon the note of the debtor and the deputy sheriff, and under an agreement that the deputy should retain the execution in his hands, and if he was called upon to pay the note might proceed to sell for his own indemnity, and when the money was paid to the creditor he was told that the execution was not intended to be satisfied. Platt, J. says, "The debt must therefore be deemed satisfied as to the judgment creditor, and that fact being established, the law founded on wise policy considers the officerfunctus officio." "To allow any man to wield the process of our courts in his own favor, in order to exact such measure of justice as he may think due to himself, would not only lead to oppression and abuse but would tend to subvert the foundation of private rights and of civil liberty." (Sherman v. Boyce, 15John. 443; and see Hammatt v. Wyman, 9 Mass. R. 138.)Stevens v. Rowe, (3 Denio, 327,) was an action on the case for not returning an execution, and Beardsley, J. in giving judgment on a motion for a new trial, says, "If the sheriff should be compelled to pay the full *Page 71 
amount of the execution, for the reason that the judgment was a lien on real estate out of which the money might have been collected, as was offered to be proved on the part of the plaintiff, he would be entirely remediless. He could not enforce the judgment and execution for his own indemnity but must stand the entire loss;" thus recognizing and reaffirming the doctrine of the cases before cited.
The debt being paid, the power to sell under the execution ceases, and as the process would not protect the officer, so no title could pass to the purchaser of property under it. The sheriff in making sale of property under process of the court, acts under a power, and if the power does not exist, no title passes even to an innocent purchaser. He who buys under a power buys at his peril and acquires no title without showing a valid subsisting power. (Wood v. Colvin, 2 Hill, 566; Cameron
v. Irwin, 5 id. 272; Deyo v. Van Valkenburgh, id. 246;Swan v. Saddlemire, 8 Wend. 676; Delaplaine v.Hitchcock, 6 Hill, 14; Carter v. Simpson, 7 John. 535.)
It is not necessary to decide that the payment of the fine to the judgment creditors to the amount of their respective claims, was a satisfaction of the judgments. It is sufficient to say that such payment put an end to the power of the sheriff under the execution, that the process thereby became functus officio;
although were it necessary, in order to give effect to the reasons upon which the rule prohibiting a sheriff from enforcing process by way of indemnity against his own neglect is based, I see no reason why the judgments should not within the reason of the rule be held to be satisfied. But the question in this case was as to the power of the sheriff under the process upon the judgment which had accomplished its purpose, and the court below therefore were not called upon to pass upon the effect of the payment by the sheriff upon the judgments, and properly declined to do so when requested by the counsel for the defendants. The request was, however, to charge that if the money was paid by the sheriff as a fine, that such payment did not extinguish or satisfy the judgment, and did not quite *Page 72 
meet the case. Perhaps payment of a mere fine would not have affected either the judgments or the process based thereon; but the fine was imposed under the statute and paid to the plaintiffs as a compensation for their damages, and the result is the same as it would have been upon a recovery of the same amount in an action upon the case for the same default. The same remark is in part applicable to the request to charge — that if the judgments had not been paid either by Carpenter or by some person at his request, or with intent to satisfy the same, then the defendants were entitled to recover. If the process having spent its force had become void, it was not material to inquire whether the judgment upon which it was founded was subsisting or not. Again, the intent with which the payment was made did not control its effect, and it would have been error to have held, that the absence of an intent to satisfy the judgment on the part of the person paying the claim to the creditor, would operate to retain the judgment in force. In Sherman v. Boyce the intent not to satisfy the judgment was clearly established, and yet it was properly held not to vary the legal effect of the transaction, and the same may be said of all the cases cited.
It was also claimed upon the trial, on behalf of the defendants, that if the plaintiff knew that the judgment creditors had received the money and the judgments had been assigned, and that the property was advertised to be sold and then endeavored to have the sale deferred, and did not give any notice to the purchaser at the time of the sale, he is to be deemed as having acquiesced in the right to sell, and is estopped from setting up that there was no right or authority to sell. Had there been nothing in the case, but the payment of the amounts of the judgments to the plaintiffs therein, and the assignment of them to George P. Jenkins, which are the only facts noticed in this connection by the defendants' counsel, the sale would have been valid, and the plaintiff could not effectually have objected to its validity. The important fact and to which no allusion is made, is that the payment to the creditors was made by the sheriff, *Page 73 
and that he then became the owner of the judgments, and by the sale of the property was seeking to enforce the executions for his indemnity; and it was not claimed in this proposition, that at the time of the negotiations of the plaintiff with the attorney of the nominal assignee and of the sheriff, or at the time of the sale, this fact was known to the plaintiff, and if not known, his silence upon the subject could not estop him. The request, therefore, of the defendant's counsel to the court, to instruct the jury in this behalf, did not meet the case or any claim of the plaintiff, or any state of facts or any legal proposition upon which the plaintiff sought or was allowed to recover.
But had the proposition embraced the whole case, and knowledge of the true character of the transaction been brought home to the plaintiff before his negotiations for an extension of the time of payment, there would have been no estoppel. The doctrine of estoppels in pais is to be strictly guarded and carefully applied. Questions upon this branch of the law more nearly concern the conscience and have to do with good morals, and are less controlled by technical rules, than most legal questions that arise. The inquiry always is, whether the party against whom an estoppel is alleged, has by his actions or words influenced the conduct of others, so that a wrong will be done to those so influenced, if the party should be permitted to show a state of facts inconsistent with his actions and words. Beardsley, J. inFrost v. The Saratoga Mutual Ins. Co., (5 Denio, 154,) says: "An estoppel in pais arises when one person is induced by the assertion of another to do that which would be prejudicial to his own interest, if the person by whom he had been induced to act in this manner was allowed to contradict or disprove what he had affirmed." Lord Denman thus defines an estoppel of this character: "But the rule of law is clear, that when one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." (Pickard v. Sears *Page 74 
6 Ad. E. 469. See also to the same effect, Watson's Ex'rs
v. McLaren, 19 Wend. 557; Dezell v. Odell, 3 Hill,
215.) In Welland Canal Co. v. Hathaway, (8 Wend. 480,) it was held that the acts or admissions relied upon by way of estoppel must have been intended to influence the conduct of the party setting them up; and Griffith v. Beecher, (10 Barb. 432,) is to the same effect. There was clearly nothing in the conduct or declarations of the plaintiff which could estop him from alleging the invalidity of the sale of the premises in question. 1. In his negotiations with Waring, the attorney, he made no declarations which he now seeks to gainsay. If he then knew the true character of the transaction, the same was better known to Waring and his principals, and his silence could not and did not mislead them. 2. There is no pretence that the plaintiff did any act or made any declaration, or refrained from speaking when he might and in good conscience should have spoken, with a view to influence the actions of any other person. He was not present at the sale, and there is no evidence that he knew the time and place at which the premises were advertised to be sold. Not being present his silence could not have influenced the conduct of those present, and his absence, without any knowledge of those present of the reasons of his absence, could not have induced them to suppose that he acquiesced in the sale. The plaintiff was not under any obligations to attend the sale. It was as much the duty of persons desirous of becoming purchasers at the sheriff's sale to seek the plaintiff, as it was the duty of the plaintiff to look after them. 3. There is no room for pretence upon the evidence, that the purchaser Cropsey in making the purchase, or the defendant Stilwell in acquiring the rights of the purchaser, were at all influenced in their actions by the conduct or declarations of the plaintiff. The court below therefore did not err in refusing to charge in this behalf as requested by the counsel for the defendants.
The offer of the plaintiff to prove the proceedings against the sheriff and the payment of the fine by the sheriff, was not as full as it might have been, and did not embrace in terms all the facts *Page 75 
established by the evidence; but the evidence itself was competent, and formed a necessary part of the testimony showing that the sheriff was divested of all power and authority to sell upon the execution.
There was no error committed by the city court, and the judgment of the supreme court should be reversed, and that of the city court of Brooklyn affirmed, with costs in the supreme court and this court.