CHARLOTTE STILWELL, executrix, etc., v. CARPENTER *et al.*, appellants.

*Judgment — release of — sale under after payment — fraudulent transfers — deficiency.*

J. owned a judgment and other claims against plaintiff's testator, who held numerous judgments against J. A settlement was made between the two at which the testator made an assignment of the judgments against J., and executed a formal release of all claims, legal and equitable, against the testator. At the time of this settlement the judgment against the testator was in the hands of one G., having been assigned to him by J. as collateral security for a loan. After testator's death J. paid the loan and G., at his request, assigned the judgment to C., who paid no consideration but held it in trust for J. C. applied to the surrogate to compel plaintiff, as executrix of the testator, to pay the judgment. Plaintiff disputed the claim, and C. issued execution under which lands belonging to testator's estate were sold. These lands were bid in by C. for less than the face of the judgment in trust for J. C. assigned the sheriff's certificate to one D. (who did not take in good faith), and a sheriff's deed was given to him. C. then, at the request of J., assigned the judgment to M., who applied to the surrogate to compel plaintiff to pay the deficiency remaining thereon after the sale. During the proceeding M. assigned the judgment to J., but this assignment was canceled. The surrogate decreed the payment of such deficiency by plaintiff.

In an action to set aside the sheriff's deed and the decree of the surrogate, *held,* that the release from J. to testator included the judgment then held by

G. That upon the payment of the loan by J. such judgment was paid, and that the sale by the sheriff conveyed no title either to the purchaser or to the assignees of the bid who acted in behalf of J. *Held*, also, that the proceeding before the surrogate was a fraud upon the part of J., and the surrogate's decree should be set aside.

APPEAL from the judgment of the special term declaring void a sheriff's deed, and setting aside a decree of the surrogate of Kings county.

The action was commenced in January, 1869, for the purpose of setting aside, or having declared inoperative and void, a deed, made March 2, 1868, by the sheriff of Kings county, purporting to convey to W. W. H. Davis, one of the defendants, certain lands in the city of Brooklyn, which had been sold by said sheriff in February, 1863, under an execution issued upon a judgment for $7,625.61, recovered by Jasper W. Gilbert against Sylvanus B. Stilwell, the plaintiff's testator, on the 23d of September, 1857; and also to set aside a decree made by the surrogate of Kings county in September, 1866, directing the plaintiff to pay to George W. Markham, another defendant, as assignee of said judgment, the balance claimed to be due thereon.

The cause was tried by the court without a jury, and the findings of facts were as follows: In January, 1858, the defendant, Jacob Carpenter, owned the judgment in question against the plaintiff's testator, and said testator at the same time owned certain judgments against said Carpenter. A settlement was effected between them, whereby all claims which Carpenter had against testator were settled by testator assigning to Carpenter judgments against him to a like amount. A few days after that settlement testator died; at the time of the settlement Jasper W. Gilbert had a claim against Carpenter for about $1,000, as security for which he held this judgment in question. This claim of Gilbert against Carpenter was paid by Carpenter prior to 12th October, 1858, and Carpenter, being insolvent, then procured Gilbert to assign the judgment to one Curtis, who paid no consideration for it, but held it in trust for Carpenter. On the 30th of November, 1859, Curtis, as assignee of this judgment, applied to the surrogate of Kings county to compel the plaintiff to pay the same. The plaintiff disputed the claim. Curtis then issued an execution to the sheriff of Kings county, upon this judgment, under which, on the 3d February, 1863, the lands above mentioned were struck off to him for $6,000, but no money was paid, and the

amount was credited on the judgment. The execution was issued on behalf of Carpenter, and the property bid in by Curtis in trust for him. Afterward the certificate of sale was assigned to defendant Davis (who was Carpenter's son-in-law), who held it in trust for Carpenter, and on the 2d March, 1868, the sheriff gave Davis, whom the court held not to be a *bona fide* purchaser, a deed for the property. Curtis then, at the request of Carpenter, assigned this judgment to Markham, who applied to the surrogate to compel the plaintiff to pay it. On December 8, 1864, Markham assigned the judgment to Carpenter, but this assignment was subsequently canceled. Afterward, upon the accounting before the surrogate, Carpenter claimed that the legal title to the judgment was in Markham, and that he (Carpenter) had no interest therein. And the surrogate made a decree directing the plaintiff to pay to Markham the balance appearing to be due upon said judgment. Since the commencement of this action the decree made by the surrogate in favor of Markham has been modified by a new decree of 4th October, 1872, directing the plaintiff to pay to Carpenter the balance due on the said judgment.

The court also found that all proceedings instituted and carried on before the surrogate for the purpose of collecting this judgment were by and on behalf of Carpenter, and in fraud of his settlement with Stilwell, and were a fraud upon the plaintiff.

Judgment was thereupon rendered for the plaintiff, declaring that the Gilbert judgment had been paid, and that the sale thereunder was inoperative and void; that the decrees made by the surrogate in favor of Markham and Carpenter had been obtained by fraud and were inequitable, and restraining them from enforcing them; from which judgment the defendants appealed.

The defendants set up that the findings of the court were not supported in the following particulars: That Carpenter was the owner of the Gilbert judgment in January, 1858: that on the 20th January, 1858, he executed a general release to the plaintiff's testator; that the Gilbert judgment was paid or released thereby; and that the plaintiff was estopped.

*Genet & Peet*, for appellant.

*E. Moore*, for respondent.

BARRETT, J. There is no doubt that the judgment recovered by Gilbert against the plaintiff's testator, and also the claim upon

FIRST DEPARTMENT,

which that judgment was founded, were, in fact, owned by the defendant Carpenter. If he did not own them it would be difficult to say who did. The claim was originally held by Harris Wilson, as security for a debt due to him by Carpenter. While the claim was so held Carpenter caused it to be assigned to Gilbert to secure a debt of his to the latter. This debt Carpenter subsequently settled, and thereupon, at his request, Gilbert assigned the judgment to one Curtis. Gilbert expressly disavows any claim of ownership, and Harris Wilson never claimed any interest after Carpenter caused the assignment from him to Gilbert. Under these circumstances, Carpenter's denial of any legal or equitable interest in the judgment or in the claim on which it was founded until long after the assignment, which he himself procured from Gilbert to Curtis, is certainly remarkable, and in view of his subsequent use of the judgment (by means of an assignment from Curtis) in settlement of certain stock transactions between himself and the defendant Markham, it is a serious question, whether further action should not be taken on such plainly unveracious testimony. It appears, that before the assignment to Curtis, and while Gilbert still held the legal title to the judgment, Carpenter and Stilwell came to a settlement of their differences. Stilwell was the owner of a large number of judgments against Carpenter, and Carpenter had large claims then in suit against Stilwell. One of these was for the very rents claimed by Gilbert in his suit. It was agreed to off set the judgment held by Stilwell against Carpenter's claims, and accordingly Carpenter, formally and by a proper instrument, released Stilwell from all claims, legal or equitable, Stilwell, upon his part, delivering to Carpenter proper assignments of the judgments, which he held against him, with the assignee's name in blank. All this was conceded by Carpenter, except as to the formal release, as to which he plead want of recollection, and then added, that if he did execute such an instrument, "it was never intended to include the Gilbert judgment." The only reason which he offers for the latter statement is his alleged want of ownership. That is, that he could not have intended to include what was not his. He does not pretend that it was not included, provided it was his, and we have seen that his ownership was undoubted. Nor do we doubt that Carpenter fully understood, that the claim for rents, which was the foundation of the Gilbert judgment, was intended to be and was covered by the release.

The conduct of Carpenter, therefore, in concealing the fact of the release from Gilbert and in inducing the latter to assign the judgment to Curtis, was clearly fraudulent. Instead of procuring that assignment, his plain duty was, as soon as he had settled with Gilbert, to procure from the latter a formal satisfaction piece for the benefit of Stilwell's legal representatives.

As a matter of law, the subsequent sale under the execution issued upon this paid judgment was without any valid subsisting power and the sheriff could convey no title thereunder. *Carpenter* v. *Stilwell,* 11 N. Y. 61, and cases there cited. Besides, the special term has found, and upon sufficient evidence, that neither Curtis, who claimed to have purchased at the sheriff's sale, nor the assignees of the bid, were *bona fide* purchasers, but in reality the mere instruments of Carpenter. The plaintiff, therefore, was not estopped from setting up the invalidity of the execution for the reason, that no innocent person was influenced by any act, declaration, or omission of her's nor did any such person take any action in the matter in reliance thereon. *Malloney* v. *Horan,* 49 N. Y. 111; *Carpenter* v. *Stilwell, supra.* Apart from that, the plaintiff was not aware, at the time of the issuing of the execution, of all the facts which would have justified her in claiming that the judgment had been absolutely extinguished.

The bid at the sheriff's sale having been less than the amount of the judgment, an effort was made to recover the balance from Stilwell's estate. The result was a decree of the surrogate in favor of the pretended holder of the judgment. This proceeding was also a fraud upon the part of Carpenter, and was properly set aside by the special term. The surrogate, from want of equitable jurisdiction, held that he must necessarily be governed by the legal title to the judgment, which was claimed to be in Markham, and the plaintiff was thus prevented from setting up her equities as against Carpenter. Yet, at this very time, Carpenter held an assignment of the judgment from Markham, which was fraudulently concealed, and it was asserted as boldly then as now, and with equal truth, that the judgment never "belonged to Carpenter." The fact is that every step which was taken from the time Carpenter procured the assignment of the judgment to Curtis, down to the final decree of the surrogate was fraudulent and void. There is nothing in the point with respect to the statute of limitations. The action was not to set aside the old judgment, but the sale and sheriff's deed

under the execution issued in January, 1863, and the surrogate's decree made in 1866. The judgment of the special term should be affirmed with costs.

*Judgment affirmed.*