By the Court.—Sedgwick, J.
It was agreed at the argument, that if, upon the plaintiff’s paying the duties in question, he had no cause of action for the duties, the subsequent omission or neglect of defendants to furnish proof sufficient to obtain from the government a repayment, did not give an action.
The learned counsel for appellant argued that the verdict could be maintained if the proof showed such negligence in respect of the loss of the two bales, that the plaintiff would be entitled, in an action on the bill of lading, or on the case, to recover the full value of the goods, which would include the invoice value and the duty combined ; without inquiring into the validity of this proposition, the case shows that the recovery of the duties was not placed on that ground. The complaint made two causes of action. Damages were' stated and calculated on the trial, as if arising from two causes of action. There were, in fact, two recoveries. The general course of the trial shows that no claim was then made, that in an action on the bill of lading, the plaintiff was entitled to recover, under any measure of damages other than that stated in the contract', viz.: the invoice value of the goods. Neither the law nor the facts were investigated in a manner appropriate to a claim that negligence on the part of the defendant would give greater damages than the invoice value.
Another ground on which the judgment was maintained by the learned counsel for the respondents, was *141 that the conduct and silence of the defendants’ agent, together with the contents of the delivery order issued to the plaintiff, led him to believe that the goods had actually arrived and were ready to be delivered, and, relying upon that as a fact, to pay the duties on them to the United States. It was claimed that the rules that prevail in an estoppel in pais were to be applied to this state of facts, and made the defendant liable for the amount of duties.
It attracts attention at once that an estoppel operates to prevent a party from asserting the non-existence of a fact, that he formerly asserted did exist. If the effect of the acts, or silence of defendant’s agent, was to lead the plaintiffs to believe that the cloth had arrived, an estoppel would prevent the defendants from showing that they had not arrived. It is only necessary to observe that such an estoppel would not be at all relevant to the case here.
It may be imagined, that, if the defendant was estopped to show that the goods had not arrived, then, in an action on the bill of lading, or rather on the case, for the two bales of cloth, the defendants might have to meet a claim that they, having the two bales, refused to deliver them, and were therefore liable for their conversion and their value at the time and place of conversion. Of course, under the views that have been expressed, as to what was the real nature of the action, and what the trial of it involved, it is impossible to pass upon such a question here. A cause of action cannot'be split, and if there be any recovery upon it, the rights of the parties are finally settled. Nevertheless, an inquiry as to the right of the defendant on the case made, will involve considerations that would be pertinent to the claim of estoppel, on the same facts in any action.
I will ask if the facts below showed certain things, that must exist, to create liability on the part of de *142 fendant ? Is it proven that the defendant’s agent did or said anything which was equivalent to an. assertion that the cloth had arrived and was ready to be delivered, or was the delivery order and the silence of the defendant’s agents calculated to lead the plaintiff to believe that the defendant’s agent meant to represent that he knew that the cloth had actually arrived ? Did the defendants intend that their act or silence should influence the plaintiffs in the matter of paying the duties, or did they know or have sufficient reason to believe that the plaintiff meant to be influenced in paying the duties forthwith, by what the defendants did, in issuing the delivery order ?
It is undoubtedly law, that it is not necessary to an equitable estoppel that the party should design to mislead. It is enough that the act was calculated to mislead, and actually did mislead, the party while acting in good faith and with reasonable diligence. This was said to be the law in Blair v. Wait (69 N. Y. 116), and to support it the Mechanics’ & Traders’ Bank v. Hazard (30 N. Y. 226), was cited. In Blair v. Wait, the rule was applied to the fact that plaintiff had said to one of the defendants, that a third person was the owner of a judgment, and that if the defendants settled with him it would be all right, and accordingly the defendants did settle the judgment. Thereupon the plaintiff was estopped from an action on the judgment, although he may have been the owner. It was clear that the plaintiff intended that what he saiff should influence and be acted on by the defendants.
In Continental Bank v. National Bank of the Commonwealth (50 N. Y. 577), Judge Folgker said • that there need not be an intention to mislead, and applied the principle to the assertion of plaintiff’s teller, that a check having on it his forged certification was all right. The facts spoke for themselves that the teller intended that the clerk who asked him the question *143 should act on what he answered. Judge Folger cited In re Bahia & S. P. Railway Co. (Law R. 3 Q. B. 584), saying it held that if a representation is made with the intention that it shall be acted upon by another, and he does so, there in an estoppel.
In Manufacturers’ & Traders’ Bank v. Hazard (30 N. Y. 226), the case above cited, Judge Johnson said it was not necessary to an equitable estoppel that the party should design to mislead. The facts were that the defendant had written his Christian name, as indorser of a note, in such a manner that the notary in sending notice of protest read it A. C. instead of M., which was the real initial. The defendant was held to be estopped from setting up a defense that the notice was not addressed to him. The defendant knew and intended that whoever should act upon his indorsement would act upon it as he wrote it.
In Brown v. Bowen (30 N. Y. 541), Judge Mullin said, that to establish an estoppel in pais it must be shown that the person sought to be estopped had made an admission or done an act with the intention of influencing the conduct of another, or that he had reason to believe would influence another.
In Payne v. Burnham (62 N. Y. 72), Church, Ch. J., said, an indispensable requisite of an estoppel in pais is, that the conduct or representation was intended to influence the other party. The same language has been used in Wilcox v. Howell (44 N. Y. 398), Welland Canal Co. v. Hathaway (8 Wend. 483), Dezell v. Odell (3 Hill, 222), Reynolds v. Lounsbury (6 Id. 534), Carpenter v. Stilwell (11 N. Y. 61), Otis v. Sill (8 Barb. 108).
The actions in the nature of deceit are founded upon intentional misleading. Apart from fraud, there would be no foundation for responsibility in cases of words spoken, of a legal kind, unless the person speaking knew or believed that another was about to act *144 upon what he said, and therefore, when he spoke, intended to influence the other. The evidence as to this intention is in the facts of the case, and, as one of them, the character and form of the matter claimed to be an estoppel. If the character is such as is likely to influence, the presumption is that the probable effect was intended. An intention to influence is consistent with no intention to mislead.
Undoubtedly, if the person charged referred in his speech or conduct to one object, disclosed, and there is another undisclosed object not brought to his attention directly or circumstantially, an equitable estoppel would not operate to bind him for the consequences connected with the undisclosed object. There could be no intention to influence as to the undisclosed object. As against him, no person could claim that he was justified in thinking that the other knew or was bound to know that he would act in reference to a matter not disclosed. The one alleging the estoppel as part of the burden of proof, must show to what subsequent course the alleged estoppel was meant to refer.
It will, no doubt, be admitted that the foundation of an estoppel is the assertion of the existence of a thing as a matter of knowledge, to this extent, at least, that no matter how positive in form the assertion is, nevertheless, it does not operate as an estoppel, if it appears that in substance the assertion is an inference from something, and the person addressed knew, or had reason to know so.
The facts were, that when the plaintiffs’ clerk applied to defendant’s clerk for a delivery order, he stated nothing as to his object, excepting that he wanted it. He chose his own time for the application. There was nothing to except the incident from the usual methodical routine of business. He was entitled to receive the delivery order at any time he saw. fit to ask for it. The main object in issuing delivery orders *145 was to show the dock-clerk that, so far as the company was interested, he might allow carmen to take away goods, or, in other words, that freight had been paid. To the most of persons who held bills of lading, delivery orders were not issued before the customhouse permit was shown, but to persons of character and responsibility, and among them the plaintiffs, it was usual, as matter of convenience, to issue the delivery order whenever it was requested, before or after the custom-house permit was obtained. The freight in this instance had been paid or secured at Aix-la-Chapelle, and the defendants would have had no reason to delay issuing the order. Indeed, in the present case, there was no reason for the defendants’ clerk to think, if the matter of duties had come up to his mind, that they had not already been paid. With not uncommon activity, the duties might have been paid. The defendants’ clerk had no reason to think of what had been or would be the plaintiffs’ conduct as to duties. And the delivery order might have been asked for before the hatches were open or the ship really moored to the dock. So proof was given as to this matter.
The substance of the face of the delivery order was a release or waiver of any claim by defendants to detain the goods. Addressed to its clerk, it was necessary to give the number of the packages, and the marks upon them, to prevent the goods of others being delivered by mistake. If there were no chance of such an accident, the order might as well have said all the plaintiff’s goods, or all the cargo, or anything equivalent. Its purpose was known to plaintiffs, and the meaning of its terms must be found from its intended operation. It was permissive and in the nature of a release ; there is no more reason for supposing that there was an assertion that the particular goods had arrived and were on hand, than there is in the case of a quit claim of land *146 with no covenants, for saying that it is an assertion that there is an estate in the laud. A controlling and most significant fact is that to the knowledge of both clerks there was an unexecuted contract between the principals, the consummation of which was to be in the future, viz., the goods themselves were thereafter to be delivered or demanded. Perhaps the clerk had no power to waive any of defendant’s rights under the contract; but if he had, the transaction of giving the delivery order was evidently not intended by either to affect the contract rights of the parties as it would be affected by an admission that the goods had actually arrived.
I am further of opinion that the testimony shows that the defendant’s clerk did not mean to assert that he knew the cloth had in fact arrived. Plaintiffs’ clerk himself testified, that he thought defendant’s clerk could not have been on the vessel to see if the goods were on board. The witness said, that was improbable. It was more than improbable. There was only a bare possibility of the improbable incident, that the clerk, who had no duties connected with the ship, should have seen the ninety-nine pieces specified in the order. When he was applied to for the delivery order, he forthwith and in the presence and to the knowledge of plaintiffs’ clerk, took from a list in his possession the marks of the goods. This list had been made from counterpart bills of lading in defendant’s possession. There was no proof that plaintiffs’ clerk believed, or had, from anything said or done by defendants, reason to believe, that the list was of goods that had actually arrived. It may be here said, that plaintiffs’ clerk neither saw nor acted on the manifest filed in the custom-house.
The published notice to consignees to take their goods, &c., cannot be justly deemed to have led any particular consignee to believe that his particular *147 goods had arrived. While it incited consignees to prompt action, it did not suggest anything that would involve the consignees omitting to find out that goods had arrived before paying duties upon them. It does not appear that the placing goods in public store was so expensive, that to avoid it an owner would pay duties even before he had ascertained that the goods were on board.
It appeared from the testimony that defendant’s clerk acted with reference only to the plaintiffs having an unembarrassed opportunity to get their goods whenever they should be prepared to receive them, and with no reference to the payment of duties, and no intention to influence the plaintiff as to that payment. The plaintiffs’ clerk did not disclose, nor did the cir* cumstances, that he meant to act upon the delivery order’, as evidence of actual arrival, and as making it safe for him to proceed to the payment of duties. He had no reason to believe that the defendant’s clerk intended to influence him in that regard. The two things had no necessary or probable connection.
The plaintiffs’ clerk was not justified in believing that the other meant to assert that he had any knowledge of an actual arrival. The latter evidently was acting in what he did on a supposition or an inference.
The facts show that the necessary constituents of an estoppel in pais that have been specified, did not exist in this case, and that the plaintiff did not have the right to recover the amount of duties, even if the other facts were sufficient.
I am of opinion that the amount of the judgment should be reduced, in the sum of $878.49, and interest from July 18, 1876, and affirmed as reduced. As the appeal was from the whole of the judgment, neither party should have costs of this appeal, in case such an order is entered. But if the defendants wish a new-trial, then the appellant should have costs of the appeal.
Van Vorst, J., concurred.