Sullivan,  }
Nov. 6, 1901. }

## PAGE *v.* CLAGGETT.

A contract between a tax collector and a town, whereby the former guarantees the latter against loss on account of unpaid taxes, is void as contrary to public policy.

An agreement between the selectmen and a collector, that a tax warrant shall continue in force after the town has been fully paid and until all taxes have been collected, is unauthorized and void.

A payment of all outstanding taxes by a collector, in pursuance of invalid agreements with the town, is wholly inoperative and does not exempt a delinquent taxpayer from arrest.

PETITION, for *habeas corpus.* Transferred from the November term, 1900, of the supreme court by *Peaslee,* J. The facts found by the court are stated in the opinion.

*Brown & Dana,* for the plaintiff.

*Albert S. Wait* and *Ira Colby & Son,* for the defendant.

REMICK, J. The collector of the town of Newport, for the years 1896, 1897, and 1898, in consideration of a sum of money guaranteed the town against loss on account of unpaid taxes. At the end of each year the collector settled with the town, and paid out of his private funds an amount equal to the taxes then outstanding; and the selectmen agreed with the collector that the warrants should continue in force until all the taxes were collected. Among the taxes unpaid when these settlements were made were the plaintiff's, and they were included in the amounts paid by the collector to the town, as above stated. The plaintiff was in no way party to these acts and agreements between the town and the collector. March 1, 1901, the plaintiff still being in default, and, as we must assume from the facts reported, being without goods and chattels upon which distress could be made, the collector, proceeding under his official warrant, took the plaintiff's body, and the plaintiff petitioned for a writ of *habeas corpus.* The petition was denied, and the plaintiff excepted.

1. The special contract between the town and collector, whereby the latter, in consideration of a sum of money, guaranteed the former against loss on account of unpaid taxes, was unauthorized and of no effect. It is unnecessary to consider whether authority existed to bind the town to pay the collector for anything beyond

the service appertaining to his office and prescribed by law; nor is it necessary to inquire whether the contract of guaranty was unauthorized, because it, rather than the personal qualifications of the collector, may have influenced his selection; for regardless of these considerations, which are not to be overlooked, the contract was clearly unauthorized for another reason. The duties of a tax collector are analogous to those of a sheriff; like a sheriff, he proceeds by virtue of a warrant requiring him, if necessary, to take the property and even the body of the taxpayer. " There exists no sound principle for the application of a different rule in relation to officers who . . . collect taxes from that applied to other officers who have duties to perform analogous in their nature" (*Tucker* v. *Aiken,* 7 N. H. 113, 133); and no different rule is in fact applied. *Butler* v. *Washburn,* 25 N. H. 251, 258; *Kinsley* v. *Hall,* 9 N. H. 190, 194; P. S., *c.* 60, *s.* 1. The sheriff must be disinterested. Com. Dig., Viscount (E) 1; *Carpenter* v. *Stillwell,* 11 N. Y. 61, 67; *Edgerly* v. *Hale, post;* P. S., *c.* 212, *s.* 4. *A fortiori,* a collector entrusted with a process carrying such summary power, running against the whole community, should be as disinterested as the nature of the office will permit. P. S., *c.* 212, *s.* 6; *Ib., c.* 60, *s.* 1. The contract of guaranty in question would have made the collector a party in interest as to every tax committed to him, contrary to the policy of the law as indicated by legislation and judicial decisions.

2. The agreement between the selectmen and the collector, that the warrants should continue in force after the collector had paid the town in full and until the taxes were collected of the taxpayers, being nothing more or less than an agreement that the collector should have the benefit of the warrant for the purpose of enforcing reimbursement, was also unauthorized and of no effect.

Governmental necessity for prompt and efficient means of obtaining money to meet the public expense has brought into use, for the collection of taxes, instrumentalities which, applied in enforcement of ordinary obligations, would violate the most sacred rights of person and property. Cool. Tax. 298. The propriety and legality of these summary and drastic measures when employed in the prescribed way, for the public benefit and under the restraints and safeguards which responsibility to the public imposes and provides, are unquestioned. Cool. Tax. 298, 302. But a tax warrant, with its peculiar attributes, is inseparable from the public for whose sovereign need it exists. It cannot be assigned, with the taxes, to whosoever will pay them, nor can it be employed by the collector to reimburse himself for taxes he has been compelled to pay for others, whether in fulfillment of a special contract of guaranty with the town or to answer for his official default.

It is only available to the public and for the public, and subject to the restraints and safeguards which public use and attendant public responsibility afford. 2 Dill. Mun. Corp. (4th ed.) 1001 and note; Cool. Tax. 300 and note; *Griffing* v. *Pintard*, 25 Miss. 173, 176; *McInerny* v. *Reed*, 23 Ia. 410, 414, 415; *Mercantile Trust Co.* v. *Mellen*, 8 Pa. Super. Ct. 645, 650.

*Griffing* v. *Pintard* is a case directly in point, and the following from the opinion is worthy of quotation: "The power of a tax collector to sell land in any case is special, and limited by the end to be accomplished. This end is to coerce the delinquent to pay the taxes which have been assessed against him. Power is therefore given by the law to the collector to compel payment by a sale of the property of the delinquent. This power only exists so long as the party is in default in performing his duty to the government, and can only be exercised by the collector while he is a disinterested party, pursuing the remedy in behalf of the government. Hence, when the taxes have been paid, immaterial by whom, the state is satisfied, and the power of sale, which was given only for the purpose of coercing payment, no longer exists. In the present case, the taxes were paid by Moore [the collector] long before the sale. . . . It is manifest that the land was not sold for the purpose of collecting any taxes due by Bowen to the state or county, but only to reimburse Moore the money which he had advanced. If it be contended that he had power to sell for this purpose, then it must be shown, to sustain the proposition, that on payment of the taxes he was subrogated to the rights and remedies of the state against delinquent taxpayers. Nothing can be found in either the letter or policy of the law giving countenance to this position."

*McInerny* v. *Reed* is also entitled to more than passing citation, both for the pertinency of what is said and the great eminence of the jurist who said it. The following is from the opinion of Judge *Dillon* in that case: "It would not do to hold that a city could delegate or farm out either its taxing power or its power to enforce the collection of taxes. It would be a startling proposition to affirm that a city could, for example, sell and assign its tax list to an individual, and authorize him to exercise the high and delicate powers conferred upon the corporation. Why not? The legal answer is, that these powers are conferred upon the municipality to be exercised by it, not to be delegated by it to others. . . . The power is delegated to the city 'to levy and collect' the tax. As above observed, the defendant is bound to pay by virtue of the powers given by this clause, and by virtue of it alone. But this obliges him to pay to the city, upon which the power is conferred, not to some person to whom the city has undertaken to delegate

this power. In bestowing the power upon the city, a power the exercise of which is often burdensome and sometimes oppressive, the legislature must be taken to place confidence in the corporation and its officers. There are many reasons why this power should not be held to be communicable to individuals. Such a doctrine would prevent the city from giving lenity, or exercising by itself and for itself, and in view of the best interests of all, the power which is given to it to collect its own taxes and assessments. We have very carefully revolved this subject in its various bearings, and think it best accordant with sound legal principles and with sound public policy to shut the door *in limine* upon a doctrine which, if pressed to its legitimate consequences, would lead to dangerous results." To the same effect as the authorities cited, but with less reason, are the following: *Carpenter* v. *Stillwell*, 11 N. Y. 61; *Reed* v. *Pruyn*, 7 Johns. 426; *Sherman* v. *Boyce*, 15 Johns. 443; *Bigelow* v. *Provost*, 5 Hill 566; *Stevens* v. *Morse*, 7 Green. 36, 39; *Whittier* v. *Heminway*, 22 Me. 238; *Boren* v. *McGehee*, 6 Porter 432; *Roundtree* v. *Weaver*, 8 Ala. 314.

Section 1, chapter 60, and section 33, chapter 43, of the Public Statutes, providing, in substance, that the powers of the collector "shall continue until all the taxes in his list are collected," in no wise conflict with the above holding. Undoubtedly, the warrant and the powers of the collector under it continue as long as any tax is outstanding in which the public are interested, for the purpose of securing such interest to the public. But when the taxes are wholly paid, as far as the public are concerned, whether by the taxpayers themselves, the collector, the collector's bondsmen, or any one else, and the public have no further interest in the same, they have been "collected" within the meaning of those sections, and the power of the collector, as such, is at an end respecting them. It is not to be presumed that the legislature, representing the people, watchful to guard against opportunity for oppression, and jealous of individual power unless restrained by official responsibility, intended the tax warrant, including the right of summary and indefinite commitment, to be in any sense assignable, either in whole or in part, at the beginning or end of the year, to the collector or any other person, or upon any consideration. To permit the warrant and its remedies to be thus employed would afford such opportunity for abuse and oppression that legislative authorization should not be found except upon clear enactment to that effect. In *Spaulding* v. *Northumberland*, 64 N. H. 153, 160, 161, the town still had an interest in the taxes; they had not been paid to the town. The town, it is true, had sued the collector's bond and recovered judgment against the collector and his sureties for the amount of the uncollected

taxes, and also held a certain contract of indemnity from the plaintiff; but neither judgment nor indemnity had been satisfied, and both were insufficient. Under these circumstances the court very properly held, and for the manifest purpose of securing the town's interest, that "the delinquent taxpayers were not released from liability to pay their taxes, or from compulsory payment, by the fact that the defendant town recovered judgment against the collector." There is nothing in the facts of that case, nor in the opinion when analyzed, to justify a contention that had the taxes been paid, as far as the town was concerned, by the collector or his sureties, he or they would have had the right to pursue the taxpayer for reimbursement, by means of the tax warrant. If there is anything in the opinion which would, by any liberty, bear such construction, it was unnecessary to the decision, and should be read in the light of the facts and limited accordingly. In *Homer* v. *Cilley*, 14 N. H. 85, 99, *Smith* v. *Messer*, 17 N. H. 420, and other cases in this jurisdiction to which our attention has been called, the elements of public interest and official responsibility were present. No case has come to our attention where a collector, who had extinguished all public interest in the taxes by full payment and satisfaction, was afterward permitted, unrestrained by the right of abatement or the general safeguards arising from public interest and superintendence, to pursue the delinquent taxpayers by means of the remedies incident to his former office, including the right of arrest and commitment. No man should be permitted to employ for his own personal benefit those drastic remedies, devised solely and justified only to meet sovereign necessity; nor should any man be permitted to serve the most arbitrary process known to the law in his own behalf. The fact that after a certain time taxes are subject to extraordinary rate of interest furnishes a peculiar reason why such a policy should not be countenanced. It would encourage official speculation, offer a premium to official neglect, and open wide the door to oppression and abuse.

As the contract and agreement by virtue and in consideration of which the collector paid the town the unpaid taxes were unauthorized and void, the payments made in pursuance thereof were inoperative and of no effect. The ordinary rule governing individuals, that when a contract against public policy is executed the law will leave the parties where it finds them, does not apply where the public is one of the parties, as in the present case. To declare void the contract of guaranty and the agreement of the selectmen that the collector should have the benefit of the warrant for his reimbursement, and at the same time uphold the payments made in reliance upon such contract and agreement, would place

the public in the attitude of repudiating the transaction while retaining its fruits — a result not to be thought of.

It follows from what has been said that the guaranty, agreement, and payment were one and all unauthorized, void, and wholly inoperative; that at the time of the plaintiff's arrest his taxes were still due and owing to the town, notwithstanding such contract, guaranty, and payment; that the warrant was still in force, and the collector still collector for the purpose of collecting the unpaid taxes; that the arrest of the plaintiff was in the line of the collector's duty and for the public benefit. The plaintiff's detention is therefore lawful, and his discharge was properly denied.

*Exception overruled.*

All concurred.