NEW YORK,
October, 1818.

SHERMAN
*v.*
BOYCE.

SHERMAN *against* BOYCE.

THIS was an action of trespass for taking three horses. The defendant pleaded *not guilty*, with notice of justification under a writ of *fieri facias.* The cause was tried before Mr. J. *Yates*, at the *Washington* circuit, in *June*, 1817.

It was proved, that the defendant, who was a deputy sheriff, took two of the plaintiff's horses, and sold them, as he alleged, under an execution against the plaintiff; that he

*A deputy sheriff having a fi. fa. in his hands, agrees with the defendant in the execution to delay the sale, and to join with the defendant in making a note, on which money should be raised, and applied to the sa-*tisfaction of the judgment, provided that he should still retain the execution in his hands, and if he was called on for payment of the note, might then proceed to sell for his own indemnity. The note is, accordingly, made, the money raised, and paid over to the agent for the creditor's attorney, in satisfaction of the judgment, the officer at the time, informing the agent that the execution was still to be kept in life for his own indemnity. The officer being afterwards called upon for payment of the note, sells the defendant's property under the execution *Held*, that the payment to the judgment creditor not being a conditional payment, was a satisfaction of the judgment, and, therefore, the execution was spent, and could not be used by the officer to enforce his own agreement with the debtor, such agreement also being illegal, and tending to oppression and abuse; and that the defendant in the execution might maintain an action of trespass against the officer for the property taken and sold by him.

then offered for sale, and sold the third horse, and directed the purchaser to go to the plaintiff's pasture and take the horse, which the purchaser did. The plaintiff, previous to the sale, had forbidden the defendant to sell the horses.

The plaintiff (due notice having been given to the opposite party) introduced parol evidence of a certain receipt, executed by *Daniel Shepherd*, as agent for *Calvin Smith*, attorney for *Jonathan Allen*, the plaintiff in an action against *Christopher Sherman*, (the plaintiff in this suit,) in the *Washington* Common Pleas. *Shepherd* testified, that previous to the sale of the horses, he received, as agent for *C. Smith*, from the defendant in this suit, the amount of the judgment in the case of *Allen* against *Sherman*, and paid the same over to *Allen* ; that at the time of giving the receipt, the defendant told the witness, that the money had been borrowed by the plaintiff, on his signing with the plaintiff as security ; that he had signed with the plaintiff, on condition that he should be allowed to keep the execution in life ; and that if he was called on to pay the money, he might then sell under the execution to indemnify himself ; that for this reason the defendant would not have the payment endorsed on the execution ; and, accordingly, the witness gave him a separate receipt.

The counsel for the defendant objected, that trespass would not lie for the horse which the defendant had not taken into his possession. The Judge decided that the action would lie ; and the defendant's counsel then offered to prove, that the defendant as deputy sheriff had levied under the *fi. fa.* in the suit of *Allen* against the present plaintiff ; that after the levy, the plaintiff desired the defendant not to sell, and that he could get the money ; that the delay was granted, and that the plaintiff informed the defendant that he could get the money of one *Barney*, if the defendant would sign with him ; this the defendant agreed to, on certain terms proposed by the plaintiff ; which were, that the execution should still remain in the defendant's hands as his security, and that if *Barney* should call on him for the money, the defendant might then sell under the execution ; that the defendant, accordingly, signed with the plaintiff a note to *Barney*, received the money, and paid it over to *Shepherd*,

at the same time informing *Shepherd*, that the execution was not intended to be discharged, and taking his separate receipt for the money; and that the defendant, before the sale, was called on by *Barney* for payment.

This evidence being objected to, was overruled, and the defendant's counsel thereupon submitted the following questions to his honour the judge; whether the payment of the money to the judgment creditor precluded the defendant from selling under the *fi. fa.* ; and if so, whether the defendant had not, by virtue of the agreement before mentioned, so far possessed himself of the plaintiff's property as to be entitled to dispose of it, in his individual capacity, and whether the plaintiff could deprive him of that right by dissenting at the time of the sale; and whether trespass would lie under the circumstances of this case. His Honour ruled these points in favour of the plaintiff, and charged the jury accordingly, who found a verdict for the plaintiff; and the defendant tendered a bill of exceptions to the opinion of the Judge.

*Cowen*, for the defendant. The justice of the case is most strongly with the defendant. We are aware of the decision of the court in *Reed* v. *Pruyn and Staats*. (7 *Johns. Rep.* 426.) Unless there is an unbending rule of law, which clearly governs the present case, the plaintiff ought not to recover. The case of *Reed* v. *Pruyn and Staats* came before the court on a motion to set aside the execution; and the court laid stress on the fraud and abuse practised. There was no agreement, as in the present case, between the deputy sheriff and the defendant, that the execution should continue in force for the deputy sheriff's security.

Is a deputy absolutely prohibited from making any agreement whatever relative to the execution? If not, then every case must depend on its peculiar circumstances. (*Kenner* v. *Hord*, 2 *H. and Munford's Rep.* 14.)

Here was a pledge with an incidental power of sale; and that power was irrevocable.

Again; ought not the plaintiff to have applied to the court, on affidavit, to set aside the execution, instead of bringing an action of trespass? If the court, on motion,

had set aside the execution, they might have directed the party not to bring an action of trespass.

*Z. R. Shepherd,* contra, relied on the case of *Reed* v. *Pruyn & Staats,* as conclusive, and contended, that such an agreement between the deputy sheriff and the defendant, in the execution, was a breach of duty, and a violation of the statute.

*Skinner,* in reply, attempted to distinguish this case from that of *Reed* v. *Pruyn & Staats,* and contended, that even if an action would lie against the defendant, it should be *trover,* not *trespass,* as the property came into his possession rightfully, not tortiously.

PLATT, J. delivered the opinion of the court.

Although the deputy sheriff declared, when he paid the amount due to the creditor, " that the execution was not intended to be satisfied," that declaration could not affect the *right of* the creditor to return the money so paid him, in satisfaction of his claim upon the execution. It was not a conditional payment, nor advance of money by the deputy sheriff to the creditor.

The fair construction of that conversation is, that the deputy meant to express his determination not to waive the rights which he had acquired, under the agreement with the plaintiff in this suit, of using the *fi. fa.* for his protection as endorser. The creditor received his money, and gave a receipt for it, to the officer, without any stipulation or condition. The *debt* must, therefore, be deemed *satisfied* as to the judgment creditor ; and that fact being established, the law, founded on wise policy, considers the officer as *functus officio.* The *direct* and *sole* object of the *fi. fa.* was to raise the money, to satisfy the judgment creditor : that object being attained, the power conferred by the writ is spent; and the officer is not permitted to use it for enforcing any bargains in which he may think himself aggrieved.

In the case of *Weller* v. *Weedale,* (*Noy,* 107.) it was decided, that if a sheriff satisfy the debt out of his own money, he cannot afterwards detain the goods of the debtor on *fi.*

*fa.* for his own indemnity.    The same doctrine was estab- NEW-YORK,
lished in this court, in *Reed* v. *Pruyn* and *Staats*, (7 *Johns.* October, 1818.
*Rep.* 426.)

JACKSON
v.
To allow any man to wield the process of our courts in HATHAWAY.
his own favour, in order to exact such a measure of justice
as he may think due to himself, would not only lead to op-
pression and abuse, but would tend to subvert the founda-
tion of private rights, and of civil liberty.

The deputy sheriff, in this case, probably acted from be-
nevolent motives ; but the agreement must be pronounced
illegal.    It was well remarked by Ch. J. *Kent,* in the case
of *Reed* v. *Pruyn* and *Staats, that " such humanity is impo-
sing ; but it may be turned into cruelty."*

We are clearly of opinion, that the evidence offered by the
defendant was properly excluded, and that an action of
*trespass* is a proper remedy in this cause.

Judgment for the plaintiff, on the bill of exceptions.