# SULLIVAN,

## JANUARY TERM, A. D. 1850.

---

### BRECK *v.* BLANCHARD.

One who, acting under process, abuses it, is a trespasser *ab initio*, and is liable as if he acted wholly without it.

If an officer, having an execution which he knows to have been paid, proceed to levy further sums upon it, he is a trespasser; but otherwise, if he have no notice that it has been paid.

If a party cause execution to be levied in a case in which the debt has been paid, he is a trespasser, and is in all cases charged with the knowledge of the payment, though holding the execution by an assignment from the nominal creditor.

An action of trespass is the proper remedy in such cases.

To a plea justifying an arrest under an execution, the plaintiff replied payment before the arrest, formally traversing that the judgment was then in full force, &c.—*Held*, that the traverse was to an immaterial matter, and that a rejoinder, denying payment, was well.

TRESPASS, for assault on the 16th day of June, 1847, and imprisoning the plaintiff, and holding him in prison until he paid the sum of $309.08, to procure his release. Also on the same day assaulting and imprisoning the plaintiff six hours, and detaining him in goal without any probable cause, and compelling him to pay $270.53, and to submit to certain unlawful demands, which the defendants had against him, and to the award of Edes and Gilmore, by which he was compelled to pay the further sum of $37.55.

The defendants pleaded, 1. The general issue. 2. That at the April term of the Court of Common Pleas for the

county of Sullivan, in 1847, one Silas H. Sabin recovered judgment against the plaintiff Breck, Powers one of the defendants, and one Harmon Stoddard, in a plea of trespass, for $747,53, and costs, taxed at $55.90. And said Sabin, thereafter, on the 19th day of April, 1847, the said judgment there being in full force, and not reversed, annulled, or in any part satisfied, sued out execution for those sums; and on the same day for value sold and assigned the judgment, and delivered the execution to H. Hubbard, who on the same day, for a valuable consideration, assigned the judgment and execution in like manner to John S. Blanchard, one of the defendants, and Albro Blodgett; and Blanchard having the execution, afterwards, and before the return day, on the 2d day of June, 1847, delivered the same to Lemuel Martindale, a special deputy of the sheriff of the county; who, thereafter, and before the return day, by virtue thereof took the plaintiff and committed him to goal, &c., where he was detained until he paid $309.08, whereupon he was immediately set at large.

To the special plea the plaintiff replied that on the 14th day of May, 1847, Powers and Stoddard paid to H. Hubbard $847.46, in satisfaction of the execution; "without this, that at the time when the said trespasses were committed the said judgment was in full force, and in no part paid or satisfied, as is alleged in said plea, and this," &c.

The defendants rejoined, "that the said Powers and Stoddard did not, nor did either of them before the taking and detaining, &c., pay to the said Hubbard the said sum of $807.46, in satisfaction of said judgment and writ of execution, nor was the said sum received and accepted," &c.

The plaintiff demurred, 1. Because the rejoinder has not put in issue a material matter traversed by the plaintiff in his replication.

2. Because the rejoinder is a departure from his said second plea, in not affirming a matter by him alleged, which is traversed by the plaintiff in his replication.

*Cushing,* for the defendant.

*P. C. Freeman,* (with whom was *Morse*) for the plaintiff.

WILCOX, J. The plaintiff in this case declares in trespass for false imprisonment. The defendant justifies under an execution issued upon a judgment recovered against the plaintiff and two others; which at the time of the issuing of the execution was in full force, not reversed or annulled, or in any part satisfied. The plaintiff replies that after the execution was issued, and before the arrest, two, who with him were the judgment-debtors, paid the judgment to H. Hubbard, and concludes the replication with a formal traverse, "without this, that at the time when the arrest was made, the said judgment was in full force and in no part satisfied." The rejoinder, passing over the traverse, denies the matter of the inducement contained in the replication; namely, the payment of the judgment, as therein alleged.

The plaintiff demurs to this, and assigns causes, the consideration of which may be postponed for the examination of a question raised as to the materiality of the allegation that the judgment had been paid before the arrest of the plaintiff upon the execution.

It is said that the allegation of the payment of the judgment to H. Hubbard is immaterial, because that trespass will not lie for a wrongful use of legal process; and that where the process of a court is regular upon its face, it will protect all acting under it until it has been vacated, or set aside by the court, or abandoned absolutely by the party suing it out.

This objection goes merely to the form of the action; for surely it cannot be contended that the second collection of an execution is just or legal; and if the party suffering from such a wrong is without remedy, there is a defect somewhere in the retributive powers of the law. We cer-

tainly have no reason to believe that the party in such a case is without redress, and the tendency of the argument, as well as of the authorities in the main, has been to show that case should have been brought instead of trespass, or that no action should have been brought till the execution had been set aside or vacated.

It has, indeed, been said that the defendants, having purchased an execution, good upon its face, are not liable unless they knew of the first payment, and have acted maliciously. That is a point which we will consider hereafter. The principal objection, then, is to the form of the action; and upon this point it is well settled that the court will not turn a party round upon the form of his remedy, where he is clearly entitled to some redress, unless compelled to do so by the established rules and principles of law. Let us then examine the authorities cited, and see how far they control the case before us.

Various cases are cited to show that trespass will not lie for the wrongful use of legal process. In *Plummer* v. *Dennett*, 6 Gr. 421, one was arrested upon a writ sued out for a pretended and groundless cause of action, with a view to compel the party to do certain things. It was held, that case for a malicious prosecution, and not trespass, was the proper remedy. There the arrest was legal and the process valid.

In *Hayden* v. *Shedd*, 11 Mass. 500, the writ had been abated upon a plea of another action pending for the same cause; yet it was held that case and not trespass was the proper form of action for one whose goods had been attached on the writ. Case would lie if the last suit were malicious, but it is questionable if it would otherwise.

In *Beatty* v. *Perkins*, 6 Wend. 382, it was held that trespass would not lie against a party who acted under a search-warrant duly granted; but case for a malicious prosecution, if the warrant were obtained for improper purposes. *Elsa* v. *Swett*, 2 Chitty 214, is to the same point.

Breck *v.* Blanchard.

All these cases show a process regularly sued out, valid in all its forms, but sued out from improper motives and applied to improper purposes. The remedy, therefore, is by case for malicious prosecution. The act done is legal, and authorized by the process, but the purpose for which it is done is wrong, and its result is an injury.

In *Blanchard* v. *Goss*, 2 N. H. 491, a capias was sued out upon a contract under $13.33, and it was alleged that the contract was made after the first day of January, 1819, and the body was not, therefore, liable to arrest. Trespass was brought for the arrest. The court held that the validity and legality of the process could not be decided collaterally, and that no action of trespass could be maintained till the process was quashed or set aside. If in this case the contract was alleged in the writ to have been made prior to the first of January, 1819, so that the process was upon its face valid, then it was properly sued out; it authorized the arrest, and its validity could not be determined but in the suit itself. Nor even in case the defendant in the original suit had prevailed, and abated or set aside the writ, on the ground that the contract was in fact made after the first of January, 1819, do we see how the creditor would be liable to an action, unless he acted maliciously. An unsuccessful party is liable to costs as of course, but where he sues out the process adapted to what he alleges as the cause of action, he is not liable to an action for damages, even if he fails to make out his case as alleged, unless he has acted maliciously.

But if it had appeared on the face of the process that the contract was made after the first of January, 1819, then, upon the principles laid down in the case, it would not protect the party, even if not set aside. The case of *Blanchard* v. *Goss* is, therefore, the case of a writ sued out, regular in all its forms, and authorizing the acts done; and the acts were proper to be done in the case alleged or set up.

How far do these authorities apply to the case under consideration? Where the process of the court has been abused, trespass against the sheriff, or other ministerial officer committing the abuse, is the proper action, if the conduct of the officer was in the first instance illegal, and an immediate injury to the body, personal or real property. 1 Ch. Pl. 170. And there is no occasion to set aside the process; that is well enough; and the injury results from the abuse of the process, as if the officer arrest one out of his bailiwick, or after the return day of the writ, or take what cannot be lawfully seized. So, though his conduct in the first instance be lawful, yet if he abuse his authority, he thereby becomes a trespasser *ab initio*. Ibid.

If J. S., who has distrained a beast damage feasant, after kill or use the beast, he becomes a trespasser *ab initio*. These acts are an abuse of his authority. So if a man who goes lawfully into an inn, be after guilty of an injurious act therein, he becomes a trespasser *ab initio*. *The Six Carpenters' Case*, 8 Co. 146.

A constable, who had the warrant of a justice of the peace to search the house of J. S. for stolen goods, pulled down the clothes of a bed where was a woman. and attempted to search under her clothes. Held, that by this indecent abuse of his authority he became a trespasser. 4 Bac. Abr. 161.

This class of cases, of which there are many in the books, differs altogether in principle from those cited by the defendants' counsel. They go upon the ground that although the parties were assuming to act under process of the court, yet that process did not authorize the acts that were done, and the parties were held liable precisely as if they had acted without any process at all. And these cases, in our judgment, control the case before us.

An execution had issued in favor of Sabin against the plaintiff and others. That execution, according to the

allegation in the plea, was paid and satisfied; and after this the defendants caused the plaintiff to be arrested upon the same execution, and imprisoned till he paid the debt a second time.

Now what does an execution authorize the party or officer to do? Simply to levy a certain amount of money, debt, damages and costs, with the officer's fees. We speak of the common form of execution. All directions or commands given to the officer are subscribing to this purpose. He is commanded, of the goods, &c., of the debtor, to cause to be levied and paid to the creditor the aforesaid sums, with lawful interest thereon, and seventeen cents more for the writ and his own fees. If he is authorized to take the goods, lands, or the body, it is only to enforce the payment of these precise sums.

If the officer does more than this, he abuses his authority and becomes a trespasser. He ceases to act under and by virtue of the process, and proceeds in abuse of it. If the debtor tender the sums due, the officer cannot touch the property, nor the hem of the debtor's garment. "The direct and sole object of the execution is to raise the money and satisfy the judgment creditor. That object having been attained, the power conferred by the writ is spent." *Sherman* v. *Royce*, 15 Johns. 443; *Rogers* v. *McDearmid*, 7 N. H. 506.

The law indeed goes beyond this. If a sheriff voluntarily permit a debtor, arrested upon an execution, to go at large, even without payment, he cannot retake him; and if he does he is subject to an action for false imprisonment. The creditor, however, may arrest him, if discharged without his consent. 1 Saund. 35, note (1;) *Atkinson* v. *Jameson*, 5 T. R. 25; *Cheever* v. *Merrick*, 2 N. H. 375; *Lathrop* v. *Briggs*, 8 Cow. 171; *Ramin* v. *Keyes*, 9 Cow. 128; 11 Mass. 15; 5 Hill 247.

So where a party was arrested, and he at whose suit the arrest had been made, ordered the sheriff to discharge him

and to release him from the action, notwithstanding which the sheriff detained him, false imprisonment was held to lie. *Withers* v. *Henley*, Cro. Jac. 379. And if the creditor discharges a debtor so arrested, without payment, he cannot arrest him again, nor proceed against any other joint debtor; and if he does he is liable in trespass. *Gould* v. *Gould*, 4 N. H. 174.

A *ca. sa.* issued upon a judgment which has been previously paid, will protect the officer, but not the party nor the attorney who issues it; and false imprisonment lies, though the process be not set aside. *Deyo* v. *Valkenburgh*, 5 Hill 242; and in *Wood* v. *Calvin*, 2 Hill 566, it was held, that if a judgment be satisfied, the power to sell under it ceases; and should a sale take place, even a *bona fide* purchaser under the judgment without notice, it is said, will gain no title. But see 1 Cow. 622.

There are various other authorities to show that where a judgment has been paid or satisfied, no execution can properly issue upon it; and if one be issued, it will afford no protection to the party who sues it out. *Ladd* v. *Blunt*, 4 Mass. 402; 9 Mass. 138; 14 Mass. 443; 6 Wend. 367; 5 Wend. 240; 10 S. & R. 399; *Smith* v. *McGowan*, 3 Barb. S. C. 410; 15 Johns. 443; 4 Wend. 474; 8 Wend. 681; 4 N. H. 173; 1 Richardson 18.

The case of *Ludington* v. *Peck*, 2 Conn. 700, is adverse to all these authorities, and cannot be sustained.

It was indeed admitted by the defendant's counsel, that if the first payment had been made to an officer, the judgment would have been satisfied and extinguished; but it was argued that such was not the effect of a payment to the creditor, not indorsed upon the execution. The authorities, however, do not sustain, but repudiate any such distinction.

In the following cases, the first payment was not to an officer. 4 Wend. 476; 8 Wend. 681; 2 Hill 566. In 5 Hill 242, there was no payment, but a discharge under an

insolvent law, of which the creditor had notice. In 1 Richardson 18, it was held that a sheriff had no authority to sell under an execution satisfied in fact, though appearing upon its face to be unsatisfied. If, however, he has no notice of the satisfaction, he will not be liable in trespass to the debtor for acting under it.

And there is no difference in principle between payment to an officer and to a creditor. The officer acts wholly for the creditor. He is, by the express command and exigency of the writ, to cause to be levied and paid to the creditor the sums named. It can make no difference whether payment be made to the creditor directly, or circuitously through the agency of the officer.

If a judgment or execution has been satisfied, and that fact does not appear upon the execution or of record, the officer who levies the execution a second time would undoubtedly be protected, if he had no knowledge of the first payment; for he is bound to execute all process, regular in its forms, which is delivered to him, and has ordinarily no means of determining whether an execution has been paid or not; *Puisen* v. *Gale*, 8 Vt. 511; 5 Wend. 240; and this, even if first paid to an officer. If the officer had knowledge, he would be liable; but notice when about to levy is not knowledge.

But the party stands in a different position; and if he wantonly takes out an execution on a satisfied judgment, he can derive no protection from it. If the judgment has been paid, it must have been paid to him, or to some one authorized by him to receive it. In such case it is easy for him to ascertain whether it has been paid or not; and if he enforces its collection in ignorance of the truth, he necessarily does so at his peril. There is no necessity for a discharge upon the execution. The debtor has no power to cause such discharge to be entered, and is as effectually protected and discharged by a tender of payment refused, as by actual payment. An officer, indeed,

holding the process without knowledge of the payment or tender, would be protected, for the reasons that have been assigned, but no body else.

Again, it is said, that these defendants are not the judgment creditors; nor was payment made to them, nor had they knowledge that payment had been made. But an execution is not negotiable; and though it is capable of being assigned, and the rights of the assignee will be recognized and protected, yet these rights are not greater nor other than those of the assignor. They do not become changed or enlarged by the assignment. If a promissory note has been negotiated before due, a *bona fide* holder will not be affected by the want or failure of consideration that would render it fruitless in the hands of the payee. But this is the exception to the ordinary rule applicable to a transfer of property, whether real or personal, and to things in action. Usually, the purchaser acquires no better title than his vendor had. And the exception, if it could be extended so as to embrace the transfer of this execution, and to give it the character and effect of a transfer of negotiable paper, would not help the defendants, since they purchased the judgment when it was over-due, and in fact after it had been regularly paid and extinguished. They purchased nothing.

What they did, they did voluntarily. They voluntarily put the process of the court in motion. They were not bound to act as the sheriff was, and they acted at their peril. Standing in the place of the judgment creditor as the owners of the writ, they were affected likewise with his responsibilities in venturing to make use of it.

The rule that process, regular in its face, must be set aside before an action will lie for acts done under it, cannot be applied to this case. This execution can never be set aside. It issued duly and properly. It was paid, and the party again attempted to levy money upon it. There was no renewal as in the case cited from 8 Vt. 511, and

in the case from Connecticut. If, therefore, the plaintiff is without remedy till the execution be set aside, he is without remedy forever. But, in our opinion, he may well maintain trespass for the abuse of the process practiced by the defendants, in attempting to enforce it after it had been already paid.

The allegation of the payment of the judgment, which is contained in the plaintiff's replication, is not an immaterial allegation, but one which goes to the merits of the case, and that objection taken by the defendants upon the plaintiff's demurrer is not sustained.

We are now to consider the pleadings in another aspect. The defendant here justifies by virtue of an execution issued upon a judgment obtained against the plaintiff and others. The plaintiff replies that the judgment had been paid, without this, that at the time of the arrest it was in full force, &c. The defendant rejoins that it was not paid as averred, and takes no notice of the formal traverse offered in the replication; and the demurrer raises the question whether the omission to take issue upon that traverse is a fault in the pleading, which depends upon another question, was the traverse well taken?

For, when the first traverse is good, and taken to a material point, and when it goes to the substance and point of the action, there shall be no other traverse taken after. But where the first traverse is idle, or not well taken, or not pertinent to the matter, but is of that which is sufficiently confessed and avoided before, the opposite party may pass it by, and tender another traverse. So where the traverse is too narrow. 1 Saund. 22, note (2;) 1 Ch. Pl. 539; Steph. Pl. 211.

*Green* v. *Ackland*, 2 Saund. 49, was assumpsit against an administratrix, who pleaded in bar another judgment obtained against her in that capacity, and averred that the debts at the time of the recovery were just and true debts, and the amount due. The plaintiff replied that the judg-

ment had been obtained by fraud, and traversed that the sum recovered was due at the time. The defendant demurred. It was argued that the plaintiff should have relied upon the fraud which he had alleged, and not upon his denial that the debt for which the judgment was rendered was due; for if a part appeared not due, the issue would be against the defendant. The replication was held good. The case is cited and acquiesced in ; Com. Dig., Pl., 7 D 9 ; but held bad by Williams, note (3,) for, 1. The averment that the sum was due, was unnecessary ; the traverse of course was to an immaterial matter. 2. The traverse was after a confession and avoidance, and therefore bad. Judgment was confessed and avoided by a plea of fraud.

The rules thus stated and illustrated may be applied to the present case.

The plaintiff confesses, and avoids the judgment and execution by which the defendants justify, by replying that it had been previously paid ; and then concludes with a formal traverse, "without this, that at the time when the arrest was made, the judgment was in full force and in no part paid or satisfied."

1. Now, in the first place, this traverse was of a matter which is not alleged in the plea. The plea alleges only that the judgment was in full force, &c., when the execution was sued out; but it does not so allege respecting it at the time of the arrest, nor was it necessary that it should have so alleged. All that is matter of legal inference, from the admitted fact of the rendition of the judgment, and the contrary should come from the other side. 2 Chit. Pl. 483, note (p;) 1 Saund. 330, note (4.)

2. The traverse tendered was too narrow—that the judgment was in full force, and in no part satisfied ; for if a part remained unpaid, the arrest would have been justified.

For these two reasons, then, the traverse was not taken of a material point, going to the substance of the action.

3. The traverse was after a confession and avoidance. The judgment was confessed, and by the allegation of payment avoided.

4. The true issue to be taken in this case is, whether the plaintiff paid the judgment, as alleged in his replication.

The traverse of the allegation, that the judgment was in no part paid, is an attempt to make an issue upon a negative allegation. That the judgment remained in full force is a mere inference of law. The plaintiff must show how it is otherwise, if he would avoid it. If payment is relied on, the more usual form is to allege it, saying nothing of the reception of the money.

The conclusion, therefore, is, that the rejoinder was well, and that there must be

*Judgment for the defendants on the demurrer.*