## NEW YORK COMMON PLEAS.

FRANCIS W. HOLBROOK, appellant, agt. MATTHEW T. BRENNAN, Sheriff, &c., respondent.

*Execution against a deputy sheriff as the judgment debtor cannot be executed by him.*

An execution issued to a deputy sheriff, who is the judgment debtor in the execution, cannot be executed against himself.

It would be absurd to hold that when the sheriff is forbidden by statute to execute process where he is a party, that he may authorize a deputy to execute process against himself; and this he does where he delivers an execution against the deputy to the deputy to execute against himself.

And where in such case the deputy returns the execution *nulla bona,* when it is made to appear that the deputy had property which might have been, during the life of the execution, applied on the execution, the sheriff will be held liable in an action for a *false return.*

*General Term, April 5th,* 1875.

THIS is an appeal from the judgment of the general term of the marine court of the city of New York, and involves review of two orders, one dated March 25th and one March 26th, 1874. The notice of appeal states the grounds of appeal. The action was against defendant as sheriff, for neglect to levy, and a false return on three executions against property of Patrick Cuff. Two judgments were entered in November, 1871, against Cuff, in the marine court, for about $110 each.

Execution on first judgment was issued November 2, 1871, and returned May 4, 1872, *nulla bona.*

Execution on second judgment was issued March 9, 1872, and returned May 21, 1872, *nulla bona.* Another execution, issued on second judgment, was issued August 6th, 1872, and returned September 30, 1872, *nulla bona.*

Patrick Cuff was the sheriff's deputy, and the first two executions were delivered by the sheriff to Cuff, as such deputy sheriff, to perform.

The third execution was delivered to Baird, another deputy.

Plaintiff shows $400 in a bank check and $100 in money in Cuff's possession, control and use; also furniture worth $1,950; also a manuscript (worth $500 and owned by Cuff), viz., a contract for the sale of land in New York city, during the running of the first execution; also the same manuscript and furniture during the running of the second writ; also the same furniture during the running of the third writ; he also occupied the land during the time of all three writs.

There is no doubt that Cuff was owner of this money, $100; he did not embezzle it; he borrowed it, and used it in the purchase of his contract, which he afterward sold and assigned and delivered, as *defendant himself* showed, for a consideration.

The sheriff knew Cuff owned this property, because Cuff knew it. No levy, or attempt to levy, was made by the sheriff, or by Cuff as deputy, and Baird made no levy, or attempt to levy, although Cuff's residence was well known in the sheriff's office.

The return of *nulla bona* was false. The damage sustained by plaintiff was the amount of the judgments and interest, $257.37.

If defendant is not liable for $257.37, then he is liable in nominal damages for having committed the executions against Patrick Cuff to said Patrick Cuff, the judgment debtor, to levy upon his own property himself.

*Charles H. Smith*, for appellant.

Excluding answer to question: Did Patrick Cuff, in December, 1871, pay you any money?

This was material, in that it tended to show there was money belonging to Cuff.

A payment is a voluntary parting of money by the owner.

Holbrook agt. Brennan.

·Money is undoubtedly subject to levy under execution. Such exclusion was in effect based on a ruling that money was not subject to levy, and such ruling was error (*Code*, §§ 298 *and* 463; *Carrol* agt. *Cone*, 40 *Barb.*, 220; *Baker* agt. *Kenworthy*, 41 *N. Y.*, 216).

I. Admitting evidence of the circumstances under which the contract was made. Evidence is not admissible to explain a written contract between· the parties thereto, much less as to third parties. Evidence of those circumstances was immaterial. It was calculated to, and actually did mislead the judge, tending, as it did, to show that Fay was the party to be benefited by the contract, and that Cuff was only a tool. It counterbalanced ,the evidence that *Cuff paid the money, took the contract in his own name,* and never told Pannes the contract was made for Fay, and requested Pannes to make the deed to Fay (because Cuff was insolvent), and that Cuff took up his residence on the land from that day to this.·

II. Admitting the deed which finally passed. It was not material to whom the property was deeded after the executions were issued.

III. Admitting evidence as to whether plaintiff's attorney ever pointed out to the sheriff property of Cuff.

This evidence was wholly illegal and incompetent.

It embarrassed plaintiff's case and misled the judge.

Plaintiff *was not bound* to give notice of or point out specific property to sheriff on issuing execution (*Tomlinson* agt. *Rowe*, *Lalor's Sup. to Hill & Denio*, 410).

Nor was he bound to tender an indemnity (*Curtis* agt. *Patterson*, 8 *Cow.*, 65; Platt agt. *Sherry*, 7 *Wend.*, 236).

IV. The improper evidence admitted affected materially the result ·to plaintiff, as is shown in the opinion of the justice, and is good ground for new trial (*Williams* agt. *Fitch*, 18 *N. Y.*, 546; *Band* agt. *Gillett*, 47 *N. Y.*, 186; *Clark* agt· *Crandall*, 3 *Barb.*, 613; 7 *Wend.*, 193; 21 *Barb.*, 489; 32 *Barb.*; *Tomlinson* agt. *Rowe*, *H. & D. Sup.*, 410).

Each finding proposed is supported by the evidence, and

the justice erred in making the order, March 26, 1874, declining so to find. A review thereof is by way of appeal from the order, and such appeal is taken (*Heroy* agt. *Kerr*, 8 *Bosw.*, 203).

Cuff owned the $100. He bought a house and lot with it. He does not say that he took the $100 without right or that he embezzled it. His language means that he borrowed it, *i. e.*, went to sheriff's office and got it, and took it and paid it to Pannes. He does not say that it was the sheriff's money, or whose money it was. Evidently he was a debtor for that $100. When Cuff, therefore, left the sheriff's office with the $100, and passed into the street, resolved to go and pay them to Pannes on the contract, he was the owner of the $100. When he took the $100 out of his pocket and, in his hands, tendered them to Pannes, with the intent to pay it to Pannes, the money was his own. Then he, as deputy sheriff, having the execution-debtor's money in his hands, neglected to levy and apply it on the execution in his hands (*Baker* agt. *Kenworthy*, 41 *N. Y.*, 215).

Cuff says this money was his wife's.

I submit that the use he made of it shows that he was a borrower of it from her, and thus he was the owner of it. He should have satisfied the execution out of it. I submit that a bank check is not a chose in action when signed and indorsed, and is leviable and salable under execution by sheriff.

The written instrument may be viewed in two aspects : One, as a contract which is intangible; the other, as a valuable piece of paper which is tangible. Had any one wrongfully taken it from Cuff, it could have been replevied by means of the sheriff (*Knehue* agt. *Williams*, 1 *Duer*, 598).

Such paper was personal property, and a vendor of it is liable on an implied warranty of title (*Ledwich* agt. *McKim*, 53 *N. Y.*, 312).

If the sheriff can recover and deliver possession of the paper or manuscript through replevin process, there is no

doubt that the paper itself, as a valuable manuscript, could be put up for sale. It was tangible, and possession of it could have been delivered to a purchaser of it as a manuscript. Cuff. had it in his hands. He was the sheriff's deputy ; no levy on it or sale of it was made.

Cuff owned the furniture. It was subject to a chattel mortgage to Ann Conroy. She assigned this mortgage to James Mulry. His certificates show him to be the owner of the mortgage, and that it was in force during the running of the executions. There is no evidence of any foreclosure by Conroy. A foreclosure would have extinguished the mortgage, but the assignment of the mortgage proves that the mortgage was in force at the time of the assignment. No levy on this furniture was made. The sheriff should have sold it, subject to the mortgage (2 *R. S.*, 290, § 2 ; *Stief* agt. *Hart*, 1 *Comstock*, 20 ; *Dennis* agt. *Whetham*, *L. R.* [9 *Q. B.*], 345 ; *See Albany Law Journal for August* 15, 1874, *p.* 106).

The general term of the marine court do not discuss this question as to the furniture at all.

No judgment for $53.07 costs should have been rendered against the plaintiff.

I submit plaintiff was entitled to judgment for actual damages, $235.37, because Cuff had the property subject to levy aforesaid. If not, then for nominal damages, by reason of the fraud and negligence of defendant in delivering the executions to Cuff. This would be for less than fifty dollars, and defendant would not be entitled to costs (*Laws* 1872).

The sheriff committed a tort in delivering the executions to Cuff. He had undertaken to perform the mandate of the court in plaintiff's interest and omitted to do it (*Addison on Torts* [*abr. ed.*], *ch.* 1, *pp.* 17 *and* 34).

Plaintiff is under no estoppel, as suggested by Mr. justice SHEA.

I submit that this irregularity was a gross fraud and omission of duty, and that the court, on appeal, will consider it,

in view of its being a fact in the case contrary to the finding that the sheriff was not negligent, which is, therefore, a finding against the evidence.

I submit that Cuff's *positive word* should not have been considered in determining the fact where his word is contradicted by his acts. He was "a highly interested witness." He says he did not own the money; but his acts with the money show that he did own it. He says the mortgage was foreclosed; but he was not present at any foreclosure, and Mulry's certificates contradict him. He says he never exercised control over the pianos after he gave them to his daughters; but the mortgage shows that he made a conditional sale of them to Mulry.

The other grounds of appeal are well taken.

The judgment and orders should be reversed, and a new trial granted, with costs.

*Brown, Hall & Vanderpoel,* for respondent.

Appeal from a judgment of the marine general term affirming the judgment entered in respondent's favor in the court below.

Action tried March 19, 1874, before Hon. DAVID McADAM, justice, without a jury.

Judgment for defendant.

Action against defendant, as sheriff, for false return of three executions founded upon two judgments, one for $110.66, and the other for $110.69, in favor of the plaintiff in this action, and against Patrick Cuff. Judgments entered November 2, 1871, and November 27, 1871, respectively, and transcripts filed.

The answer puts in issue all the material allegations of the complaint, except that defendant was sheriff.

First execution issued November, 2, 1871, and returned *nulla*, May 4, 1872.

Second execution issued March 9, 1872, and returned *nulla*, May 21, 1872.

Third execution, *alias* of second, issued August 6, 1872, and returned *nulla*, September 30, 1872.

The evidence shows contract for the sale and purchase of a house and lot No. 220 West Twenty-fifth street, between John B. Pannes and Patrick Cuff, dated December 19, 1871, and recorded April 9, 1872.

On the agreement was an assignment from Cuff to Patrick Fay, consideration one dollar.

The deed of this lot from Pannes was executed to Fay, not Cuff.

The consideration of $500 was paid in two installments, one of $100, December 28, 1871, and one of $400, February 2, 1872, the latter in a check of Thomas Ryan.

The $100 was not Cuff's money, but was money he had taken from the sheriff's office ; Ryan's check did not represent Cuff's money but his wife's.

Pannes, the grantor, did not know for whom the contract was made ; Cuff swears it was made at Fay's instance, and the deed shows it was for him.

The furniture was bought years ago ; the pianos cost, one $600, and the other $350, ten or twelve years before, and were presented to his daughters when he was perfectly solvent ; the furniture cost $1,000 at different times.

There was no evidence as to its value at the time of the trial.

A chattel mortgage, to secure $1,500 had been given by Cuff on the furniture and pianos, July 6, 1871.

It was payable on demand.

A demand had been repeatedly made for the money secured by the mortgage before November 1, 1871.

And the mortgagee had taken possession of the property and foreclosed the mortgage before the executions in question had been received.

No other things in action or property were shown — none were pointed out by the plaintiff.

The judge who tried the case delivered a written opinion,

in which he says: "On the merits, the inferences and pre-sumptions arising from the evidence produced by the plaintiff, tending to show that the judgment debtor named in the execution had property out of which the sheriff might and ought to have collected the judgments, is overcome by the positive evidence of the judgment debtor, that he had no property liable to levy or sale under execution at the time; and his equitable interest in the furniture, if of any value, was so situated that the sheriff was under no obligation to assume the risk and expense of a levy and sale, without at least a request if not an indemnity."

I. The answer to the question "Did Patrick Cuff, in December, 1871, pay you any money?" was properly excluded.

The mere fact of paying money to Pannes was not material.

The question to be tried was not whether Cuff had money, but whether he had money which the sheriff could levy on.

The sheriff can undoubtedly levy on money, but not in the pockets of the judgment debtor; much less can he levy on the money of another in the debtor's possession.

The question did not tend to show that Cuff had any money of his own in his possession, nor, if he had, that it was in a condition to be levied on by the sheriff. *Non constat*, he might have paid the money as an agent, or, in making the payment, might, as in fact he did, misappropriate or embezzle another's money.

This would give him no title to it (*Saltus* agt. *Everett*, 20 *Wend.*, 267; *McNeil* agt. *Tenth Nat. Bk.*, 46 *N. Y.*, 325).

It was also properly excluded on the ground that there was better evidence of the payment.

The evidence sought to be elicited by the question was subsequently fully admitted, when the plaintiff properly proved the fact.

II. The objection to the admission of the assignment, on the ground stated, is untenable.

The statute does not require a seal (2 *R. S., part II, chap.*

Holbrook agt. Brennan.

*VII, title* 188, *p.* 139, *Edmonds'* ed. ; *Tallman* agt. *Franklin,* 14 *N. Y.,* 584; 16 *Ind.,* 219).

III. The exceptions to the questions are not well taken.

They certainly were competent; they were also material. Because they effectually rebutted any inference that may have been drawn from the circumstances of the case, that the sheriff acted willfully and in disregard of his official duty.

They also tended to show that the plaintiff was as ignorant of any property belonging to the debtor as the defendant was.

IV. The question was not aimed at the contents of the written agreement, nor did it point at an explanation of it.

It was simply directed to the reason why it was taken *in Cuff's name.*

It was material to show whether the contract was made for himself or another.

V. The deed was properly admitted in evidence.

It was the highest proof of the fact that the real estate, the subject of the contract, never became the property of Cuff.

VI. The judgment is abundantly supported by the evidence. Any other would have been set aside by this court.

1. The plaintiff did not show any property in the judgment debtor, subject to levy on *execution* (*Ransom* agt. *Miner,* 3 *Sandf.,* 692; *R. S., part III, chap. VI,* § 13, *et seq.*).

The $100 was not his; it was "taken from the sheriff's office." This is not contradicted; as such it was not subject to levy (*Dubois* agt. *Dubois,* 6 *Cow.,* 494; *Muscott* agt. *Woodworth,* 14 *How.,* 477).

But even if it does not come within the rule of these cases, it was money collected by him in his capacity as deputy; as such it belonged to the person for whom it was collected, and was rightfully in his possession. It so continued until actually paid to Mr. Pannes, when it became Pannes', and was not subject to a levy. At any time before actual payment, Cuff's wrong intention might have been reconsidered, and he might have paid the money to the rightful owner. The misapplica-

tion of the money and the payment to Pannes were simultaneous acts.

2. The check of Ryan for $500 was not Cuff's; it belonged to his wife. This is not contradicted. But even if his, it was a thing in action.

Things in action are not subject to levy on *execution* (*Baker* agt. *Kenworthy*, 41 *N. Y.*, 215, *affirming Carroll* agt. *Cone*, 40 *Barb.*, 220; *Ransom* agt. *Miner*, 3 *Sandf.*, 692; *Ingalls* agt. *Lord*, 1 *Cow.*, 240).

3. The contract was not Cuff's, but was made for Fay; but if Cuff's, it, too, was a thing in action only, and not an estate, or interest in real estate, and therefore not the subject of levy on execution (*see authorities, supra, and* 1 *R. S.*, 736, § 4; *Judge* agt. *Cartwright*, 5 *Seld.*, 52; *Griffin* agt. *Spencer*, 6 *Hill*, 525; *Talbot* agt. *Chamberlain*, 3 *Paige*, 219).

4. There was no proof that the household furniture was worth more than $1,500; it was old, and years before had cost only $1,000, exclusive of the pianos, and with them the original cost of all was only $1,950; and it would have been remarkable furniture that would have realized, after years of use, within $450 of its cost. But from this must be deducted household furniture exempt from levy and sale under execution, to the extent of $250.

Then there is no contradiction but that the pianos were given by Cuff to his daughters while he was solvent and not in contemplation of insolvency; such gifts are good, and such property could not be levied on.

But even if the furniture was worth all claimed by plaintiff, the *bona fides* of the mortgage on it was not questioned by him.

It is without contradiction that the mortgage was payable on demand; a demand had been made, and the mortgage was unpaid; even if there had been no foreclosure, the property was not subject to levy or execution after default (*Hall* agt. *Tuttle*, 8 *Wend.*, 375; *see opinion at page* 392; *Champlin*

agt. *Johnson*, 39 *Barb.*, 606; *Howland* agt. *Willett*, 3 *Sandf.*, 607; *Stewart* agt. *Slater*, 6 *Duer*, 83).

5. No other property or thing in action was shown in Cuff.

6. There is an absolute failure on the part of the plaintiff .of any cause of action against the defendant. As judge McADAM well says: "The influences and presumptions arising from the evidence produced by the plaintiff, tending to show that the judgment debtor named in the execution had property out of which the sheriff might and ought to have collected the judgments, is overcome by the positive evidence of the judgment debtor, that he had no property liable to levy or sale under execution at the time, and his equitable interest in the furniture, if of any value, was so situated that the sheriff was under no obligation to assume the risk and expense of a levy and sale."

VII. The judgment being supported by the evidence is conclusive as to any disputed questions of fact (*Roe* agt. *Conger*, 1 *Sweeny*, 382; *Rowe* agt. *Stevens*, 12 *Abb.* [*N. S.*], 389; *Smith* agt. *Tiffany*, 36 *Barb.*, 23).

The same rule applies, whether the cause is tried by a justice or jury (*Matthews* agt. *Poultney*, 33 *Barb.*, 127; *Arnoux* agt. *Homans*, 25 *How.*, 427).

VIII. The requests to find are all of them, in effect, merely requests to the justice to reverse his judgment on the facts presented, and his refusal so to do was not error, as we have already shown.

IX. It is admitted that the date of issuing the execution as stated in the fourth finding of fact is a mistake; it should have been "2d day of November, 1871," instead of "9th day of March, 1872." The other error, charged in the sixth finding, is a mistake of the plaintiff or his printer, as it is right in the original finding on file in this court.

But it is submitted that this is a mere clerical error, and does not affect any substantial right of the parties; if desirable to have it corrected, this court or the court below may so order; it is certainly not a reason for granting a new trial.

· X. The judgment of the court below should be affirmed, with costs.

CHAS. P. DALY, *Ch. J.* — This case presents the extraordinary feature that two executions against Patrick Cuff, a judgment debtor, were delivered by the sheriff to Cuff, who was one of the sheriff's deputies, to execute against himself, and by whom they were returned *nulla bona*. The action was for a false return.

The sheriff cannot execute process against himself, and where he is a party the process must be executed by the coroner (2 *R. S.*, 441, § 84).

Independent of the statute, this has always been the case (*Elston* agt. *Brett*, *Moore R.*, 547; *Weston* agt. *Coulson*, 1 *Wm. Bl.*, 506; *Vin. Abm.*, *Sheriff*, *P.*; *Bacon Abm.*, *Sheriff*, *M.*; *Com. Dig.*, *Viscount E.*; *Watson on Sheriffs*, 51). He might originally, by the common law, serve the writ for the commencement of the action where he was the plaintiff; "but," says Viner, "if the sheriff be defendant, he cannot serve the process against himself;" but it was held at a later period that he could not serve the process even for the commencement of the action (*Bacon Abm.*, *Process*; *pl.* 60, 8 *H.* 6, 28; *Vin. Abm.*, *Sheriff*, *P.*, *note*). The reason of this rule of the common law, as given by Bacon, is "to prevent partiality, which every one is naturally guilty of to himself" (*Bacon Abm.*, *Sheriff*, *M.*). And this reason applies as well to the deputy as it does to the sheriff.

It would be absurd to hold, when the sheriff is forbidden to execute process where he is a party, that he may authorize a deputy to execute process against himself; and yet this is what the sheriff did in this case. He delivered two executions against his deputy to the deputy to execute against himself.

In *Sherman* agt. *Boyce* (15 *Johns.*, 443), the deputy united with the defendant in making a note for the satisfaction of the judgment, on which money was raised and applied to the

Holbrook agt. Brennan.

payment of the judgment, with the understanding between the deputy and the defendant that the deputy was to retain the execution in his hands, so that, if he were compelled to pay the joint note, he might enforce the execution by a levy and sale of the defendant's property; which arrangement was communicated by the deputy to the plaintiff in the judgment, when he paid over to him the money raised upon the note. It was held that although the deputy probably acted from benevolent motives, the whole proceeding on his part was illegal, and that he could not enforce the execution.

"To allow *any man*," said PLATT, J., "to wield the process of our courts *in his own favor*, to exact *such measure* of *justice as he may think due to himself*, would not only lead to oppression and abuse, but would tend to subvert the foundation of private right and civil liberty."

In *Mills* agt. *Young* (23 *Wend.*, 314) a deputy sheriff who, by neglecting to levy, had made himself liable for the payment of the judgment, gave his note for the amount of it to the plaintiff, and took from the plaintiff an assignment of the judgment, by which he became the party interested in the enforcement of it. He then went to the judgment debtor, and, without telling him that he had become the assignee of the judgment, threatened to levy the execution, upon which the defendant gave him his note for the payment of the amount of the judgment, and also paid to him his fees upon the execution; and the deputy, in his character as deputy sheriff, made an indorsement that the execution was paid. It was held that the deputy could maintain no action against the defendant on the note. "Although," said BRONSON, J., it was formerly held that a *deputy sheriff* might serve a *capias ad respondendum* in his own favor where no bail is required, it is questionable whether he can do so now. But whatever may be the rule in respect to *mesne process*, it is clear that the sheriff cannot execute process in his own favor.

I find no authority for such a practice, and to allow it would be opening a wide door to abuse and oppression."

If, as was held in this case, a deputy sheriff cannot execute final process in his own favor, neither should he be allowed to execute process which is against himself. Indeed, I think that the early case of *Elston* agt. *Brett* (*Moore*, 547) may be taken as authority for the proposition that no man can be allowed to execute final process where he has an interest.

*Carpenter* agt. *Stillwell* (1 *Kern.*, 69) is a further illustration of this salutary rule, in which judge W. F. ALLEN held that it makes no difference, in the application of it, whether the sheriff is nominally a party or only beneficially interested. He cites with approbation the passage quoted from PLATT, J., in *Sherman* agt. *Boyce* (*supra*), and dwells upon the danger of a perversion of the process of the court by an interested officer.

The present case itself is an illustration of the propriety of the rule that a public officer shall not have process put into his hands to execute against himself.

This deputy sheriff was, upon his own showing, insolvent. His furniture was mortgaged to his sister-in-law, who lived in the same house with him, and was thereby in possession of it. After one of these executions was placed in his hands, he made a contract for the purchase of a house and lot in this city, for which he was to pay $2,725, $500 of which was to be paid on the signing and delivery of the agreement, and to assume the payment of mortgages to the amount of $11,500. One hundred dollars of the amount he paid on the 28th of January, 1871, which $100 he says he "took from the sheriff's office," and the remaining $400 he paid on the 2d of February, 1872, by a check, which he says was for money not belonging to him, but to his wife.

This contract, as appears by an indorsement upon it, which is without date, was assigned by him to one Patrick Fay, who he says was a friend of his, who advised him to secure the house, as it was for sale. The assignment is for the nominal

Holbrook agt. Brennan.

consideration of one dollar. Whether Fay paid any more for it does not appear. It does, however, appear, on the defendant's showing, that a conveyance under this contract was made on the 12th of April, 1872, by the owner, to this Patrick Fay, upon the delivery of which conveyance some one must have paid the residue of the purchase-money payable by the contract, which was $2,225. On the 9th of March, 1872, the other execution was placed in Cuff's hands, both of which executions were afterward returned by the sheriff *nulla bona.* That the $100 which Cuff says he took from the sheriff's office belonged to Cuff appears in the fact that he disposed of it as his own property.

The sheriff's counsel argues that it was money collected by Cuff in his capacity as deputy, but that does not appear. He does not say so, nor that he embezzled it, nor that it belonged to the sheriff or to any other person. He simply says that he took it from the sheriff's office, which may have been strictly true. He may, from all he says to the contrary, have beeen entitled to take it, and such would be the presumption, as he paid it away in partial payment of a contract entered into for his own benefit.

The return of these executions, therefore, was a false return.

They were not and could not be executed by the delivery of them to Cuff to act as sheriff. No effort was made to ascertain if Cuff had any property upon which they could be levied; for in his hands there was no intention that they should be collected by a levy upon anything belonging to him. Whilst he had one of these executions in his hands he had property at least to the extent of $100, which, from his acts, must be assumed to have belonged to him, and which could have been applied to the satisfaction of this execution. The return, therefore, was a false return, and the judgment rendered for the defendant was erroneous and should be reversed.

In an action against the sheriff for a false return, slight evidence is sufficient to put the sheriff upon proof of the

truth of the return (*Crocker on Sheriffs*, § 861). In this case, the fact that the execution was put in the hands of the judgment debtor himself, and that after it was received the judgment debtor had $100 which could have been applied in satisfaction of the judgment, was sufficient.

ROBINSON and LARRAMORE, JJ., concurred.

Judgment reversed and new trial ordered, with costs to abide the event.