HAWKINS V. MIMS, AD., ET AL.

SURETIES: *Discharge of, by creditor's indulgence to principal.*

Mere delay or negligence of the creditor. to compel the principal debtor to pay will not discharge the surety. It is only acts which tend to prejudice him or to deprive him of the power of obtaining indemnity that have that effect. If the obligee releases any of his securities or enters into a new and different contract with the principal; or stays execution after its levy upon his property, whereby the lien is lost, or does any other act whereby the principal is discharged or his responsibility lessened, the non-assenting surety will be discharged. And so where a receiver, committed to prison for not paying over money in his hands in obedience to the order of the court, is released from prison with the assent of the party to whom it was ordered to be paid, when he was able to pay, such assent and release, and the subsequent insolvency of the receiver will not discharge the surety in his bond.

APPEAL from *Little River* Circuit Court.

Hon. JAMES K. YOUNG, Circuit Judge.

*Dan Jones*, for appellant:

Hawkins as surety was released by consent of Mims to Lovett's release from custody. 1 *Eng.*, 317; 13 *J. R.*, 174; 1 *Eng.*, 123; 2 *Vesey, Jr.*, 542; 4 *ib.*, 824, 833. As in case a creditor takes out execution against principal and waives it. 2 *Swanst.*, 185; 1 *Wils. C. C.*, 418; 3 *Esp.*, 47; 1 *Sim. & S.*, 581; 34 *Texas*, 189. See also *Vose v. Florida R. R. Co.*, 50 *N. Y.*, 369.

*Williams & Battle*, for appellees :

The creditor not bound to prosecute his claim against the principal. 2 *Am. Leading Cases.*, pp. 339, 340 and authorities cited. *Ib.* (4 ed.), 349, 352, 360, 361, 342, 320; *Leading Cases in Equity*, *Vol.* 2, *Pt.* 2 (last ed.), pp. 1902, 1904, 1900.

10—36

SMITH, S. J. This action was brought against the surety on a receiver's bond to recover the fund shown to be in the hands of the receiver by his settlement with the court which had appointed him; which fund the receiver, by final decree entered in the suit, had been adjudged to pay over to the appellee, Mims, as administrator of the estate of Waddell. The defense was that the receiver had been attached for disobedience to the order to pay over and had been afterwards discharged from custody, upon his personal recognizance, the said Mims consenting to such discharge; that the receiver had the ability to comply with said order, and payment of the money might have been coerced by sending him to jail; that the receiver had since left the state and had no property therein. And it was claimed that the acquiescence of Mims in the release of the receiver had exonerated the sureties on the bond. To the answer setting up this defense a demurrer was sustained; and the defendant electing to stand upon his answer, final judgment was rendered against him and he removed the case here.

The answer presents no defense to the action. In principle it does not differ from a plea by a surety that when the obligation fell due the principal was insolvent and the creditor neglected and forbore to sue him until he became insolvent, which was adjudged bad in *King & Houston v. State Bank*, 9 Ark., 185; or from a plea that the obligee in a bond had failed to prove the claim against the estate of the second obligee, whereby the claim was barred by the statute of non-claim, which was condemned in *Ashby v. Johnson*, 23 Ark., 163.

In *Wright v. Sampson*, 6 Vesey, Jr.,734, Lord ELDON observes that he "never understood that as between obligee and surety there was any obligation of active diligence against the principal. The surety is a guarantee and it is his busi-

ness to see whether the principal pays and not that of the creditor."

There is a substantial distinction, which is clearly pointed out by Judge HARE in his valuable note to the case of *Pain v. Packard, 2 American Leading Cases, 402, fifth edition*, between those remedies with which a creditor is invested by law and those which are conferred by act of the parties. "The former are rights which need not be pursued further than the creditor thinks fit; the latter, trusts, held for the benefit of others as well as his own and which must consequently be executed with good faith and diligence. In the one case his duties are merely passive; in the other they are so far active that he may be answerable for laches or supineness in the management of that which he has received. He may, therefore, refrain from issuing execution against the principal, even where his estate is manifestly diminishing in value and becoming less adequate to meet his obligations. And the better opinion would seem to be, that he is not responsible for suffering judgment to expire, or abandoning a lien acquired by an attachment or execution, unless the execution of the writ has gone far enough to operate as a virtual payment or satisfaction of the debt."

Mere delay, then, or negligence on the part of the creditor to call upon or compel the principal debtor to pay gives the surety no defense. It is only acts which tends to prejudice him or to deprive him of the power of obtaining indemnity, which have that effect. Of course if the obligee releases any of his securities, or enters into a new contract with the principal, varying the terms of the original agreement, or stays execution, after its levy on the property of the principal, whereby the lien is lost, or does any other act, the necessary effect of which is to discharge the principal from the debt or to lessen his responsibility, the non-

1. SURETY: DISCHARGE OF:

Mere delay of creditor to compel debtor to pay will not discharge the surety.

assenting surety will be discharged, for such acts increase the surety's risk. *Smith v. Tunno, 1 McCord, Chy., 443; Baker v. Briggs, 8 Pick., 122; Sneed's Ex'r v. White, 3 J. J. Marsh, 525; Dixon v. Ewing, 3 Ohio, 218; Commissioners v. Ross, 3 Binney, 520; Baird v. Rice, 1 Call (Va.), 18; Bullitt Winston, 1 Mump., 283.*

But Mims has done nothing which disables him from pursuing the receiver at any time. He has never had the means of satisfaction actually or potentially in his hands. The discharge of the receiver from custody must be referred to the humanity of the court and not to a reckless disregard by Mims of the rights of the appellant. The court was perhaps convinced that it was out of the power of the receiver to comply with its order. If the receiver had gone to jail, he must have been discharged upon the adjournment of the court. Imprisonment for debt, except in cases of fraud, has been abolished in this state.

The consent of Mims that the receiver might be released from custody upon his personal recognizance to appear at the next term of court could have no greater effect than the discontinuance of a suit once brought against the principal. It has been frequently decided that this does not discharge the surety. *Fulton v. Mathews, 15 Johns., 443; Manning v. Shotwell, 2 Southard, 584.*

The case *of Pain v. Packard, 13 Johns., 174,* cited for appellant, established in New York the doctrine that the surety is exonerated if, upon request made to the holder of the obligation to prosecute the principal, an action was not brought. And this principle has been incorporated into our jurisprudence by legislative enactment, with certain limitations as to the form of the notice and the time within which the creditor must sue after being served with notice. But it is expressly provided that the principle shall have no application to bonds given by officers or

trustees, to secure the performance of the duties of their office or trust. *Gantt's Digest, sec. 5696–7–8.*

There is an anomalous case—*People v. Jansen, 7 Johns., 332*—not noticed in the briefs filed here. It was an action against the heirs of a surety, on a bond given for the faithful discharge of the duty of a loan officer, under a statute of New York. And it was held that the surety might set up in his defense the laches of the supervisors in not discharging and prosecuting the loan officer for his first default, but suffering him to continue, after repeated defaults, for more than ten years, and until the loan officer had become insolvent. The decision has been undermined, if not virtually overruled, by *People v. Berner, 13 Johns., 382; People v. Foot, 19 Johns., 58; Looney v. Hughes, 26 N. Y., 514,* where an act required the county treasurer to issue a warrant against a delinquent town collector, in twenty days, and it was held to be no defense for the sureties that if the warrant had issued against their principal within the time prescribed by law, the amount due might have been collected of him ; by *Supervisors v. Otis, 62 N. Y., 88,* where it was ruled that no laches, upon the part of an obligee or creditor, or non-performance of some act, which might prevent loss to a surety, would, in the absence of an express covenant or condition, discharge a surety, but the neglect must be of some positive duty to him, and by *Hubbard v. Gurney, 64 N. Y., 461.* Outside of New York, the principle of *People v. Jansen* has been almost universally repudiated by the courts.

We have not forgotten that at common law, the release of a debtor, whose person was in execution upon a *capias ad satisfaciendum*, extinguished the judgment itself. But a proceeding for contempt can not interfere with the prosecution of any other remedy to which Mims may be entitled, except that he can not be paid twice.

The remedy of a surety, who is dissatisfied with the

degree of activity displayed by the creditor in the pursuit of his principal, is to pay the debt himself. This subrogates him to all the rights and remedies of the creditor, and he can then manage the affair to suit himself.

The judgment of the court below is affirmed.